180 N.J. Super. 491 (1981)
435 A.2d 850
IN RE THE MATTER OF ERIC HINSINGER, CHARGED WITH CONTEMPT.
Superior Court of New Jersey, Appellate Division.
Argued August 11, 1981.
Decided August 20, 1981.
*493 Before Judges KOLE, JOELSON and McELROY.
John M. Apicella, Assistant Deputy Public Defender, argued the cause for appellant Eric Hinsinger (Stanley C. Van Ness, Public Defender, attorney).
Thomas A. Penn, Deputy Attorney General, argued the cause for respondent State of New Jersey (James R. Zazzali, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by KOLE, J.A.D.
On March 18, 1981 Eric Hinsinger (hereafter "defendant") was arrested as a material witness in the murder prosecution of James Vidovic. After a hearing at which four psychiatrists testified, Judge DiGisi found that defendant was competent to testify.
On June 12, 1981 defendant was called as a witness in the Vidovic case but refused to swear or affirm, or give testimony, despite the judge's instructions that he was required to testify and despite a consultation with his attorney. The judge cited him for contempt. A summary hearing on the matter was held before the judge on June 18, pursuant to R. 1:10-1 relating to *494 contempts in the actual presence of the court. He found defendant guilty of contempt and sentenced him to a six-month term in the county jail. Defendant appeals.
Dr. Kuvin, a psychiatrist, was called to testify on defendant's behalf in order to offer an explanation for defendant's refusal to testify. He interviewed Hinsinger for an hour, during which time he did not speak. The doctor indicated that defendant was "selectively mute"; that there was no physical reason for defendant's inability to speak; that defendant was suffering from a "factitious disorder" producing his mutism predicated on a clear underlying mental disorder, and that although the mutism was voluntary, in that he could talk, "he won't talk because his thought patterns are so disturbed." He stated that this is a recognized psychiatric disease, and although, intellectually, defendant's refusal to speak after being ordered to do so was willful, emotionally it was not.
Dr. Crain, another psychiatrist, had also examined defendant. He had reported that defendant had a factitious disorder, but he also indicated that defendant could talk if he so desired; he just did not want to talk.
In holding that defendant was guilty of contempt the judge noted that he had observed defendant in court many times, and he was satisfied that his actions were voluntary. He further noted that several psychiatrists had concluded that he was competent to testify. The judge indicated that defendant had complied with the court's requests, such as to "sit down" and that he had watched defendant listen attentively to his attorney, but nevertheless, "when a lawyer wants to talk to him, he makes out he's not interested and looks away and won't even look at the lawyer." The judge also took into account the fact that defendant had written letters to his attorney, despite his mutism, and had a history of "turning on and off when he so desires." He concluded that defendant had acted in knowing defiance of the requirement that he testify.
*495 Four days later, on June 22, defendant was called as a witness in the Vidovic case for the defense. After being given the oath, he nodded his head affirmatively. Vidovic's attorney asked him whether he had been convicted of various crimes, and he responded, "The only thing I am guilty of is the murder of Wanda Lewis," the victim in the Vidovic prosecution. He also responded briefly to some of the questions asked by the prosecutor on cross-examination. After a number of other questions he took refuge in the Fifth Amendment and refused to answer any more questions. Eventually he did not respond at all to questioning.
Defendant raises the following issues on this appeal: (1) the judge erred in holding a summary contempt proceeding; (2) the judge erred in finding defendant guilty of contempt; (3) defendant is entitled to credit for time served while he was held as a material witness.
The judge properly considered this matter as involving a summary contempt proceeding.
Contempt includes disobedience of a court order. In re Yengo, 84 N.J. 111, 119 (1980), cert. den. 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981) (Yengo). A plenary trial, however, is not required in every contempt case. R. 1:10-1 provides that "[c]ontempt in the actual presence of a judge may be adjudged summarily by the judge without notice or order to show cause." Defendant's refusal to testify was committed in the presence of the judge. Nevertheless, relying on Yengo, defendant contends that his conduct constituted indirect contempt, which must be tried before a different judge.
Yengo involved the unexplained absence of an attorney from a trial at which he represented one of the defendants. The court characterized such a situation as an "enigma" in that the absence alone is not contempt; instead, a subsequently proffered inadequate excuse constitutes the contempt. Id. at 124. The court thus concluded that such conduct fell somewhere between direct (in the judge's presence) and indirect contempt. For this reason, the attorney should first be given the opportunity *496 to explain his absence. Id. at 126. The absence of a proper explanation creates the need for the judge to deal summarily with the matter. Id. at 127. The court also indicated that if there is an apparently adequate explanation, the need for immediate action is diminished, and the contempt proceeding should be heard by another judge. Ibid. The court noted: "If the proffered explanation may require proof of facts occurring outside the presence of the court, the better practice is to proceed before another judge." Ibid.
Defendant contends that this language contemplates the present state of facts. He submits that his refusal to testify, by itself, is not contempt, because the issue of whether he was capable of forming the criminal intent must also be determined. He argues that "once the trial judge set the matter over for a hearing on the issue of mental capacity of the contemnor to formulate the requisite criminal intent ..." the matter is governed by the procedure outlined in Yengo. He claims that since, as envisioned in Yengo, an adequate explanation was offered for defendant's conduct, the proceeding should have been transferred to a different judge.
Contrary to defendant's contention, Yengo does not mean that whenever a contemnor offers some kind of explanation for his apparently contumacious conduct the matter becomes an indirect contempt and a summary proceeding is inappropriate. Yengo focused solely on the special problem of whether an attorney's absence constituted indirect or direct contempt. The court stressed that this presented a unique situation because the absence alone was not contempt. The key to the offense is the validity of the explanation offered. 84 N.J. at 124. Adjudication of the validity of the attorney's excuse may require reference to facts not immediately before the court. Id. at 124-125.
Yengo's analysis does not apply to a situation such as that in the instant case. A witness' refusal to obey a judge's order to testify is clearly different from an attorney's absence. The contumacious conduct  disregarding a judge's order  occurs in the presence of the court. Such defiance of the court's authority *497 is contempt and may be tried summarily. In re Contempt of Carton, 48 N.J. 9, 21 (1966); In re Boyd, 36 N.J. 285, 287 (1962); United States v. Wilson, 421 U.S. 309, 315-316, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975).
Defendant's interpretation of Yengo would vitiate the summary contempt proceeding. The fact that the contemnor offers an explanation for his conduct and wishes to present evidence, even psychiatric in nature, in support of his claim does not convert a direct contempt into one that is indirect. Almost every contempt calls for an explanation. In re Yengo, 84 N.J. at 133 (Handler, J., concurring). Even when a person commits contempt which directly insults the court, it must still be proven that he acted with criminal intent. Id. at 133-134; New Jersey Dep't of Health v. Roselle, 34 N.J. 331, 337 (1961). The contemnor must be accorded the opportunity, as defendant was here, to attempt to show that he did not possess the requisite mens rea. This may be done at a summary hearing; there is no need to transfer the matter to another judge. Justice Handler apparently foresaw that there would be those who would misinterpret the majority opinion in Yengo as defendant has done. He thus noted in his concurrence (joined by Justices Pashman and Schreiber):
... the usual requirement of proof of intent and the opportunity for the charged party to rebut any normal inferences of a guilty state of mind by offering an "explanation" does not convert an obstructive courtroom absence, which itself has occurred in court and which directly interferes with the court's authority, into some other kind of non-event or innocuous occurrence that mysteriously has taken place somewhere else. (84 N.J. at 134)
The fact that the judge relied on his observations of defendant in court in reaching his determination does not convert a direct contempt into one that is indirect in nature.
The theory espoused by defendant would emasculate R. 1:10-1 and violate the principle that the trial court must have inherent power to punish direct affronts to its authority swiftly, in order to ensure obedience to court orders and respect for the court. In re Yengo, supra, 84 N.J. at 126, 130; In re Fair Lawn Ed. Ass'n, 63 N.J. 112, 114-115 (1973), cert. den. 414 U.S. 855, 94 S.Ct. 155, 38 L.Ed.2d 104 (1973).
*498 Since Judge DiGisi accorded defendant a full opportunity, pursuant to R. 1:10-1, to offer his excuse for his failure to testify, there is plainly no merit to his claim that the judge erred in employing the summary contempt procedure.
Defendant contends that it was not proven beyond a reasonable doubt that he possessed the intent to commit contempt. He points to the conclusion of Dr. Kuvin that he had a psychiatric disorder which prevented him from being able to speak. This mental illness, according to defendant, made him incapable of forming the necessary criminal intent. Defendant submits that no testimony was adduced to negate this conclusion.
The scope of appellate review of contempt cases is broad. On appeal, our task is to try the matter de novo on the record below, both as to the facts and the law. R. 2:10-4; In re Yengo, supra, 84 N.J. at 135; In re Ed. Ass'n of Passaic, Inc., 117 N.J. Super. 255, 259 (App.Div. 1971), certif. den. 60 N.J. 198 (1972). We have so considered this matter on the record submitted to us and have concluded that there is no reason to disturb the judge's finding that defendant had acted willfully. Although Dr. Kuvin found that defendant's mental disorder prevented him from speaking, three psychiatrists had concluded that he was competent to testify. Even Kuvin admitted that intellectually, defendant's silence was willful; emotionally, however, it was not. Furthermore, Judge DiGisi had the opportunity to observe defendant's actions. He noted that defendant had complied with requests such as, "take the witness stand," and had listened intently to his attorney's instructions. Defendant, however, refused to look at the judge when addressed by him. The judge took account of the fact that defendant had written letters to his attorney even after he had stopped talking to anyone. It was also pointed out that defendant had undergone a period of muteness in the early 1970s. The record plainly supports, beyond a reasonable doubt, the conclusion that defendant was capable of communicating when he wanted to, and that he had purposely ignored the order to testify.
*499 This conclusion is buttressed by the fact that defendant did testify only four days after the contempt hearing. While the judge obviously did not know this when he convicted defendant of contempt, defendant's subsequent behavior confirms his belief that the refusal to speak was voluntary.
There is also no substance to defendant's contention that he is entitled to credit for time served while he was held as a material witness.
Defendant was arrested as a material witness on March 18, 1981. Up to the June 18 contempt hearing he had been in custody in the county jail or in Bergen Pines Hospital. On June 18 he was sentenced to six months in the county jail for contempt.
Defendant contends that he should have received credit for the three months that he was in custody prior to the imposition of the penalty for contempt. He relies on R. 3:21-8, which provides:
The defendant shall receive credit on the term of a custodial sentence for any time he has served in custody in jail or in a state hospital between his arrest and the imposition of sentence.
Defendant submits that the rule requires that "any time" served be deducted from the sentence for contempt. The State contends that R. 3:21-8 refers only to sentencing on the crime for which he was initially arrested, that the time served as a material witness has no connection with the contempt offense and that thus defendant is not entitled to credit for time served as a material witness. We agree with the State.
R. 3:21-8 only applies to confinement directly attributable to the particular offense giving rise to the initial incarceration. State v. Allen, 155 N.J. Super. 582, 584 (App.Div. 1978), certif. den. 77 N.J. 472 (1978); State v. Council, 137 N.J. Super. 306, 308 (App.Div. 1975); State v. Marnin, 108 N.J. Super. 442, 445 (App.Div. 1970), certif. den. 59 N.J. 435 (1971), cert. den. 400 U.S. 835, 91 S.Ct. 70, 27 L.Ed.2d 67 (1971); see, also, State v. Brandfon, 38 N.J. Super. 412 (Cty.Ct. 1955), aff'd o.b. 40 N.J. Super. *500 328 (App.Div. 1956); State v. Lynk, 166 N.J. Super. 400, 401-402 (Law Div. 1979).
The holdings in State v. Beatty, 128 N.J. Super. 488 (App.Div. 1974) and State v. Johnson, 167 N.J. Super. 64 (App.Div. 1979) are not to the contrary. Moreover, they are plainly distinguishable from the matter before us.
Defendant's confinement as a material witness was unrelated to the offense of contempt. If defendant were entitled to credit for the time served as a material witness, the penalty imposed for contempt would be vitiated. The maximum penalty allowed after a summary contempt conviction is six months imprisonment. In re Yengo, supra, 84 N.J. at 121. If a trial were delayed, resulting in a lengthy period of confinement for the material witness, he would have virtual immunity from any punishment for this type of contempt, because the credit for time served would negate the contempt sentence. Cf. State v. Marnin, supra, 108 N.J. Super. at 445.
A contempt conviction would be meaningless if a defendant knew that the sentence for his contempt would be reduced for time already spent in custody for other reasons. The trial judge would lose the ability to vindicate the court's authority, since his sentence could be nullified by credit for prior custody. Thus, we hold that a sentence for contempt relates solely to that offense and should not be affected by time served for another offense.
Defendant, however, is entitled to some credit on his contempt sentence.
Since the citation for contempt was effected on June 12, 1981, in effect from that point on defendant was in custody not as a material witness  since he had refused to testify at all  but for the charge relating to contempt, pending the disposition of that charge. Under these circumstances, he is entitled to credit for the period between the citation for contempt and the conviction and sentencing for contempt  i.e. June 12 to June 18, 1981, when he began serving his sentence on the contempt conviction. The judgment of conviction, including the sentence, shall be modified accordingly by the trial judge.
*501 Defendant also contends that the six-month sentence for contempt should be reduced in consideration of the fact that he testified a few days later. We do not agree. If anything, such conduct shows that the judge's decision and the sentence which he imposed were proper. Defendant refused to obey the judge's order to testify. The judge, finding his refusal to be willful, was justified in imposing a sentence of six months in order to vindicate his authority. Defendant's subsequent change of heart does not change the fact that he had acted contumaciously. Furthermore, his subsequent testimony was hardly complete; after answering some questions, he eventually retreated back into silence. There is thus no reason to modify the sentence.
The judgment, as modified, is affirmed.