226 N.J. Super. 699 (1988)
545 A.2d 279
STATE OF NEW JERSEY
v.
MICHAEL GALE, A/K/A MICHAEL FLOWERS, DEFENDANT.
Superior Court of New Jersey, Law Division Burlington County.
Decided May 13, 1988.
*701 Philip E. Haines, assigned counsel for defendant.
Terence Tennant, Asst. Prosecutor, for the State (Stephen G. Raymond, Prosecutor).
HAINES, A.J.S.C.
Defendant Michael Gale was charged with shoplifting, a violation of N.J.S.A.2C:20-11. He appeared before the Evesham Township Municipal Court on October 22, 1987, without counsel. The court advised him of the meaning of the charge and the following exchange took place:
Do you understand that charge, shoplifting? You have the right to remain silent. It's your right against self-incrimination. In the event that you waive or give up that right, what you say will be taken down and may be used by the State in the prosecution of its case against you. You have the right to be represented by an attorney, either an attorney of your own choosing, if you can afford one; if you cannot afford one, you may make application through this court for the services of an attorney. This is a disorderly persons offense. This court does retain jurisdiction. Are you in a position at this time to enter a plea of guilty or not-guilty to the charge without the presence of legal counsel?
Mr. Gale: I plead guilty to ...
The Court: Is there anything you would like to say on your behalf, sir?

*702 Mr. Gale: Well, not so much in my behalf, other than the fact that, at the present time, I needed the money....
(Defendant is sworn)
The Court: Have you ever been convicted of shoplifting before in the State of New Jersey?
Mr. Gale: No sir.
The Court: It's a first offense?
Mr. Gale: Yes, sir.
The Court: Subject to verification through the NCIC, a plea of guilty having been entered, enter a finding of guilty. Due to the value and the intentional actions taken by the defendant, I sentence the defendant to 30 days in the Burlington County Jail, $250 fine, $25 costs, $30 violent crimes compensation penalty. You may remove the defendant.
Mr. Gale: Thirty days, sir?
The Court: Thirty days.
Nothing further appears in the record of the October 22, 1987, hearing. Shortly thereafter the court received an abstract of the defendant's criminal record which showed that he had 29 prior convictions for shoplifting. The court therefore had the defendant reappear on November 5, 1987. The transcript of the hearing then held reveals the following:
The Court: .... Well, Mr. Gale, this computer printout is about four pages  four feet long, and I believe it evidences about 29 prior convictions for shoplifting, doesn't it?
Mr. Gale: Yes, sir.
The Court: Therefore, you have perjured yourself in this Court; haven't you?
Mr. Gale: I believe I have, sir.
The Court: What do you have to say for yourself?
Mr. Gale: Your Honor, nothing, other than the fact that at that time in court here, I did try to get over. I knew that, at that time, you didn't have my prior criminal history and because of that I perjured myself, lied, and told you that I didn't, to receive a much linear (sic) sentence. In which case, it didn't happen that way. You gave me a 30-day sentence anyway. So in lieu of all that, Your Honor, the only thing I can really say is that I, you know, apologize for playing on your intelligence and the credibility of the court system. Also the fact that because of the NCIC report, my credibility also has been nil and void. So like I said, I apologize for more or less trying to play on your intelligence, and I'm ready to accept whatever the Court deems necessary as punishment.
The Court: The matter is returned to this Court for purposes of reconsideration of sentence. As to the violation of 2C:20-11, find the defendant to be a multiple offender. I will sentence accordingly, a fine of $1,000, six-month's period of incarceration. In addition, as a result of the false swearing and *703 misrepresentations and perjurious conduct of the defendant in this Court, in open contempt and sentence the defendant to an additional six-month's period of incarceration. Periods of incarceration shall be consecutive and not concurrent. You may remove the defendant.
Gale appealed his convictions of shoplifting and contempt to this court and counsel was assigned to represent him. He raises questions concerning his right to counsel below, the entry of his plea of guilty and the contempt conviction. Resolution of those issues requires a rehearing.

A. The Right to Counsel

Any person charged with the commission of a crime is entitled to be represented by counsel of his or her choosing. If that person faces a "consequence of magnitude", e.g., imprisonment or loss of driving privilege, and is indigent, a court must provide him with an assigned attorney. Rodriguez v. Rosenblatt, 58 N.J. 281 (1971). An indigent defendant may waive counsel but must do so intelligently and voluntarily. A painstaking explanation of the advisability of and right to counsel as well as an inquiry into the defendant's understanding, must precede acceptance of a waiver. State v. Lach, 213 N.J. Super. 466, 470-471 (App.Div. 1986); State v. Guerin, 208 N.J. Super. 527, 531-536 (App.Div. 1986). In Guerin, the Court said: "Courts will indulge every reasonable presumption against the waiver of fundamental constitutional rights and will not presume their loss by acquiescence." Id. at 533.
The explanation given the defendant in the present case does not meet the test. Gale's only advice from the court below was that he had a right to be represented by an attorney and, if he could not afford one, that he could apply for an assigned counsel. He was provided with no other information and never responded to the court's question as to whether he wanted to proceed without counsel. He pled guilty, was fined $250 and sentenced to jail for 30 days. Thus, Gale faced a "consequence of magnitude" and the court below should not have proceeded *704 with the hearing until the right to counsel question was addressed with care. That care was not exercised here.

B. The Entry of the Guilty Plea

Guilty pleas may be accepted by our courts, including our municipal courts, only after certain exacting requirements have been met. R.3:9-2, applicable to the municipal courts pursuant to R.7:1, provides:
A defendant may plead only guilty or not guilty to an offense. The court, in its discretion, may refuse to accept a plea of guilty and shall not accept such plea without first addressing the defendant personally and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea and that the plea is made voluntarily, not as the result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea....
The requirements of the rule were not followed in this case. No factual basis for the plea was obtained. No inquiry was made to determine whether the defendant understood the nature of the charge and entered the plea voluntarily. No advice was provided with respect to the consequences of the plea, particularly consequences attracted by a record of multiple shoplifting offenses.
These requirements, as well as the necessary right to counsel procedures, impose substantial burdens on municipal courts which entertain an enormous volume of cases. That is a burden, however, which must be assumed. Strict observance of the law regarding acceptance of guilty pleas and the right to counsel is essential for the protection of the constitutional rights of persons charged with crime. The rules cannot be simplified or ignored by reason of docket pressures. Constitutional rights can never be subordinated to a quest for efficiency.
The fact that the defendant, because of his many convictions, may have been knowledgeable and the results of his prosecution fair does not cure the defective procedure. In State v. Taylor, 80 N.J. 353 (1979), the Supreme Court said:

*705 A guilty plea is not to be set aside whenever the trial court procedures are less than perfect. Although a per se ruling permitting plea retraction has sometimes been utilized upon the breach of an established procedural safeguard, a number of courts have ruled that whether a defendant should be permitted to vacate his plea ought to be decided on a case-by-case basis, depending upon whether the defendant can be said to have been prejudiced by the omission ... The touchstone is basic fairness to the defendant, an approach we think eminently more serviceable in the administration of criminal justice. [at 363-364, citations omitted].
Taylor involved an effort to retract a guilty plea entered as part of a plea bargain in a murder case. The trial court, acting with considerable care, had advised the defendant of his rights and the consequences of his plea, following R.3:9-2 at length. The defendant, however, had not been advised of certain merger possibilities. The court, after examining the record, decided that the defendant had been treated fairly and denied his application to withdraw the guilty plea. The circumstances here are very different: little or no advice was given to the defendant concerning the entry of the guilty plea; none of the requirements of R.3:9-2 was met. The plea must be set aside.

C. The Contempt Proceeding

Gale, according to his own statements, committed perjury. He was sworn, asked whether he had any prior convictions and said that he did not. On being confronted with his record of 29 convictions he said, in part: "I knew that, at that time, you didn't have my prior criminal history and because of that I perjured myself, lied and told you that I didn't, to receive a much linear (sic) sentence." This was a contempt in facie curiae properly treated as such by the court below. Kerr S.S. Co., Inc. v. Westhoff, 204 N.J. Super. 300 (Law Div. 1985), aff'd, 215 N.J. Super. 301 (App.Div. 1987).
Contempts occurring in the actual presence of the court are addressed by R.1:10-1 which provides:
Contempt in the actual presence of a judge may be adjudged summarily by the judge without notice or order to show cause. The order of contempt shall *706 recite the facts and contain a certification by the judge that he saw or heard the conduct constituting the contempt.
This rule is made applicable to the municipal courts by R.1:1-1.
The rights of a defendant charged with contempt in the face of the court are very limited. In re Contempt of Carton, 48 N.J. 9 (1966), describes them:
(R.4:87-1 [now R.1:10-1]) deals with an offense committed in the presence of the court and permits the immediate entry of an order reciting the facts and adjudging the offender guilty of contempt. This short procedure may be used, as the rule says, "only if the judge certifies by order that he saw or heard the conduct constituting the contempt and that it was committed in his actual presence." This authority to deal instanter with an offense so committed arises from necessity, to support the judge's control of the courtroom. And since the judge knows of the offense by his own senses, he need not adduce proof of the wrong, but may merely certify the facts he witnessed in the order of conviction. The defendant's right to be heard is limited to the proof of material facts, if any, of which the court may be unaware, to the legal evaluation of the facts, and to punishment. [at 21].
Due process also required the defendant in this case to be provided with counsel. This is particularly so in view of the very significant penalty incurred by Gale: additional imprisonment for five months plus a $750 increase in the fine for the shoplifting offense and six months imprisonment for the contempt. In re DeMarco, 224 N.J. Super. 105 (App.Div. 1988), held that:
Under our due process concept it is also appropriate to allow the alleged contemnor the right to be represented by an attorney, to retreat from his conduct, and to have the opportunity to correct misunderstandings on the part of the judge. [at 120-121].
There is a difference between a contempt which occurs "in the face of the court" and one which constitutes the violation of a court order. In the latter case, the judge whose order allegedly was violated may not try the contempt charge unless the defendant consents and "the defendant is afforded all the rights of one charged with crime except the right to indictment and to trial by jury." In re: Ruth M. Buehrer, et al, 50 N.J. 501, 515-516 (1967).
It should be noted that where there is a possibility that the penalty for the contempt may exceed that imposable for a *707 "petty offense" (six months in jail and a $1,000 fine; Id. at 522; N.J.S.A.2C:43-3 & -8) the R.1:10 procedures do not apply and a right to trial by jury exists. Further, State v. Owens, 54 N.J. 153 (1969), held that when a defendant is charged with more than one petty offense and they are factually related, a jury trial should be offered, absent which offer the maximum sentence for both offenses may not exceed that available for a single petty offense. Id. at 163. That rule is applicable here.
Did the lapse of time between the date of the occurrence of the perjured statement and the date of the contempt hearing below require the reference of the matter to another judge? Kerr S.S. Co., Inc. involved perjury committed in the presence of a judge on September 6, 1984, but not revealed until February 22, 1985. The defendant was given four weeks after that to show that he did not intend to mislead the judge. This delay was held not to "automatically convert the case into one requiring a hearing before another judge." 215 N.J. Super. at 305. In In re Hinsinger, 180 N.J. Super. 491 (App.Div. 1981), a delay of six days occurred between the date of the offense (refusal to swear, affirm or give testimony) and the date of the summary contempt hearing when sentence was imposed. The Appellate Division held that the judge in whose presence the contempt occurred was eligible to conduct the contempt hearing. It is apparent, on the basis of these cases, that the judge below was eligible to conduct the contempt hearing.
Nevertheless, the proceedings below were defective. They did not comply with the requirements set forth in Carton or DeMarco. The judge did not certify the facts, the defendant was not provided with counsel and was not given an opportunity to address the question of punishment. In re Logan, 52 N.J. 475 (1968); DeMarco. Furthermore, he was unrepresented when the contempt occurred. The advice of counsel could have prevented that occurrence. Consequently, the contempt conviction must be set aside; the defendant's perjury may not again be considered.