753 A.2d 1164

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JOHN DE ROSA, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 2, 2000—Decided June 6, 2000—
Amended Opinion June 27, 2000.

Before Judges PRESSLER, CIANCIA and ARNOLD.

*Robert M. Vreeland* argued the cause for appellant.

*Robert L. Cerefice,* Special Deputy Attorney General, argued the cause for respondent (*Donald C. Campolo,* Assistant Attorney General, Acting Essex County Prosecutor, attorney; *Mr. Cerefice,* on the brief).

The opinion of the court was delivered by

CIANCIA, J.A.D.

This appeal presents novel issues concerning the entitlement to jail credits. It is complicated somewhat by an absence of factual information, brought about in part by the age of the case and the unavailability of certain records.

The relevant procedural history available from the record before us is as follows. Defendant John De Rosa was arrested on murder and weapons charges on October 16, 1980. The record does not indicate if his incarceration following his arrest was attributable to a denial of bail or an inability to meet it. On November 3, 1980, while incarcerated, he pled guilty to a fourth degree assault charge and a third degree receiving stolen property charge. He was sentenced on these charges on November 18, 1980 to an aggregate term of eighteen months. The presentence report states he received jail credits for that sentence from the date of his plea on November 3, 1980 to the date of sentence on November 18, 1980, in addition to a twelve-day credit from his arrest on one or both of those charges in June 1980.

On April 16, 1981, defendant was convicted on the murder and weapons charges. On May 27, 1981, he received an aggregate sentence of forty years with a twenty-year period of parole ineligibility. While serving that sentence defendant pled guilty in June 1981 to additional charges of criminal mischief and possession of a weapon. He received a six and one-half-year sentence that was to run concurrently with the sentences for murder and weapons possession. In August 1982 defendant pled guilty to one or more burglary charges and received a total sentence of ten years. That term was also made to run concurrently with the murder/weapons-possession sentence.

On May 23, 1983, defendant's murder and weapons convictions were reversed by this court. The State's petition for certification was denied on September 24, 1984. 97 *N.J.* 696, 483 *A.*2d 206 (1984). On April 1, 1986, he was paroled from the ten-year burglary sentence and we assume he was by then paroled from the earlier six and one-half-year sentence for criminal mischief and

possession of a weapon. He remained incarcerated on the murder charge that was eventually retried in January 1987. Defendant asserts, and the State does not contest, that the delay in initiating the second murder trial was through no fault of the defendant. That trial again resulted in a conviction for murder and on February 26, 1987, defendant was sentenced to a forty-year prison term with a twenty-year period of parole disqualification. It is that sentence he is now serving and to which he seeks the application of jail credits over and above those he has received to date.

It is not necessary to recount the details of defendant's attempts over the years through direct appeal, post-conviction relief petitions and other applications to obtain the jail credits to which he claims entitlement. At present the dispute has resolved itself into two discrete periods of time.

### *The First Period*

Defendant seeks jail credits for that period of time prior to the first murder trial when he was serving an eighteen-month sentence on charges of assault and receiving stolen property. He was also incarcerated at that time on the murder charge, either because no bail had been set or, more likely, because he was unable to meet bail. In any event, we are satisfied that jail credits pursuant to *R.* 3:21–8 are not available to defendant for the period of time starting November 18, 1980, and while he was serving the sentence for the third and fourth degree offenses prior to his conviction for murder and weapons possession. That rule requires that a defendant receive credit "for any time served in custody in jail or in a state hospital between arrest and the imposition of sentence" but the rule only applies to confinement directly attributable to the particular offense giving rise to the initial incarceration. *State v. Black,* 153 *N.J.* 438, 710 *A.*2d 428 (1998); *In re Hinsinger,* 180 *N.J.Super.* 491, 499, 435 *A.*2d 850 (App.Div.1981).

Under analogous circumstances it has been held that the primary basis for incarceration is the actual sentence being served by a defendant pursuant to a conviction, not the detainer or pending charges lodged against him. *State v. Council,* 137 *N.J.Super.* 306, 349 *A.*2d 71 (App.Div.1975); *compare State v. Hill,* 208 *N.J.Super.* 492, 506 *A.*2d 373 (App.Div.), *certif. denied,* 104 *N.J.* 412, 517 *A.*2d 411 (1986) (credit not allowable on detainer charge when defendant incarcerated awaiting disposition of other unrelated charges.) Defendant's initial incarceration was based on the murder charge. Once defendant was sentenced on the third and fourth degree offenses it was those convictions that constituted his primary basis for incarceration. That is to say, his confinement was not most directly attributable to the murder charge but rather to his convictions on the third and fourth degree offenses.

■ Although defendant is not entitled to jail credits from November 1980 to April 1981, we believe that he is entitled to gap time under the present circumstances. *N.J.S.A.* 2C:44–5b states, in part:

> Sentences of imprisonment imposed at different times. When a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the former sentence, other than an offense committed while in custody: ... (2) Whether the court determines that the terms shall run concurrently or consecutively, the defendant shall be credited with time served in imprisonment on the prior sentence in determining the permissible aggregate length of the term or terms remaining to be served ....

We find that defendant's circumstances qualify him for gap time from when he began his eighteen-month sentence on the third and fourth degree offenses until he was paroled on that sentence or until he was convicted for murder and weapons possession on April 16, 1981, whichever came first. Obviously the murder was committed before defendant was sentenced on the third and fourth degree offenses. Indeed, at one point during defendant's sentencing odyssey, gap time credits were apparently given for this period of time, although ultimately an amended judgment of conviction was not entered for reasons that are not at all clear.

It seems generally agreed that defendant was incarcerated for eighteen days on the murder charge before he pled guilty to the third and fourth degree offenses on November 3, 1980. Between his plea on November 3, 1980 and his sentence on November 18, 1980, defendant was entitled to jail credits on the murder charge just as he was so entitled from the date of his arrest on the murder charge, October 16, 1980, through November 2, 1980. His plea to the third and fourth degree offenses did not alter that entitlement.[1] Gap time does not begin until a sentence is imposed. Thus he is entitled to gap time credits from November 18, 1980 until his parole on those charges, a date that is not available on the present appellate record. If defendant was not paroled by the date of his first murder conviction then he is entitled to gap time up to that date, April 16, 1981. If defendant was paroled on those charges before he was convicted of murder the first time, then he is entitled to jail credits for that period of incarceration between the parole date on the third and fourth degree charges and the initial sentence on the murder conviction. *R.* 3:21–8.

## *The Second Period*

Defendant also contends he is entitled to credits for all time spent in prison between his first conviction and sentence for murder and his second conviction and sentence for the same offense. He was, in fact, granted credits for much of this time. The period between the original murder conviction and the denial of certification of the Appellate Division reversal is not in dispute and accordingly we do not address it. The time period in dispute is from September 26, 1984, the date of the denial of the petition for certification until April 1, 1986, when defendant was paroled on the burglary convictions. Credits were allowed for the period between the date of that parole and the date of reconviction.

---

[1] Defendant's receipt of jail credits against his eighteen-month sentence for the period of time November 3, 1980 to November 18, 1980 may have been mistaken under the circumstances but that mistake should not preclude the proper application of jail credits on the murder conviction.

The theory denying credits for the period in dispute was that during that period of time defendant was not convicted of murder and was primarily incarcerated on other convictions, even though he would have been incarcerated in any event awaiting retrial on the overturned murder conviction. In other words, the State takes the position that defendant's status during this period of time was the equivalent of his status prior to the first murder trial when he was primarily incarcerated for the third and fourth degree offenses.

While there is a certain symmetry in the State's argument, it overlooks a basic difference between the two periods of incarceration. Defendant's circumstances after the first murder conviction, specifically his status as being charged but not yet convicted of murder between the denial of the State's petition for certification and his parole on the burglary charges, was a product of his successful exercise of his constitutional right to appeal. Had defendant not appealed his first murder conviction, or appealed it and lost, there is no question he would have received credit on the murder sentence even while serving the concurrent sentences for burglary and other charges pled to subsequent to the first murder conviction.

The present circumstances are analogous to those considered by the United States Supreme Court in *North Carolina v. Pearce*, 395 *U.S.* 711, 89 *S.Ct.* 2072, 23 *L.Ed.*2d 656 (1969). There the defendants had successfully appealed their initial convictions and been reconvicted upon retrial. The Court held it would be a denial of due process to impose a heavier sentence to punish a defendant for getting his original conviction set aside. In reaching this decision, Mr. Justice Stewart said:

It can hardly be doubted that it would be a flagrant violation of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside. Where, as in each of the cases before us, the original conviction has been set aside because of a constitutional error, the imposition of such a punishment, 'penalizing those who choose to exercise' constitutional rights, 'would be

patently unconstitutional.' And the very threat inherent in the existence of such a punitive policy would, with respect to those still in prison, serve to 'chill the exercise of basic constitutional rights.' But even if the first conviction has been set aside for nonconstitutional error, the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be no less a violation of due process of law. 'A new sentence, with enhanced punishment, based upon such a reason, would be a flagrant violation of the rights of the defendant.' A court is 'without right to * * * put a price on an appeal. A defendant's exercise of a right of appeal must be free and unfettered. * * : (I)t is unfair to use the great power given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice.' 'This Court has never held that the States are required to establish avenues of appellate review, but it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts.'

Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

[395 *U.S.* at 723–725, 89 *S.Ct.* at 2080, 23 *L.Ed.*2d at 668–669 (citations omitted) (footnotes omitted).]

The present circumstances run parallel to those in *Pearce*. If defendant had not appealed his first conviction, or if he had appealed and lost, the time period here at issue would have been credited against his sentence for murder even though he was simultaneously serving time for other offenses on sentences that were running concurrently. If defendant had not pled to those other charges he would have received jail credit for the time spent incarcerated between the reversal of his first conviction and his sentence upon reconviction, pursuant to *R.* 3:21–8. If defendant is now denied these credits, in a very real sense he is being punished for successfully challenging his conviction. The threat of such a consequence with respect to others in similar circumstances chills the right to appeal, in New Jersey a constitutional right, and impedes open and equal access to the courts. *See Curry v. New Jersey State Parole Board*, 309 *N.J.Super.* 66, 71–72, 706 *A.2d* 769 (App.Div.1998) (defendant who pled guilty to manslaughter after

his murder conviction was reversed was entitled to certain jail credits earned on the murder conviction).

We also note, again as in *Pearce,* at least the potential for vindictiveness on the part of the State. The time period here in question—*i.e.,* between denial of the State's petition for certification and defendant's retrial and conviction, is primarily controlled by the State. There is no assertion that the State intentionally delayed defendant's retrial until his other sentences ran out, but in fact that is what happened. It was approximately twenty-seven months from denial of the State's petition for certification to defendant's retrial. The record discloses no reason for that delay.

In *State v. Heisler,* 192 *N.J.Super.* 586, 471 *A.*2d 805 (App.Div. 1984), we held that imposition of a sentence five times greater than the sentence originally imposed, absent reasons to justify that increase, penalized the defendant for successfully challenging the initial, illegal sentence and violated due process. In so holding we stated, "[t]his court has previously held that '[d]ue process in its constitutional sense is little more than a metonym for fair play. *State v. Haber,* 132 *N.J.L.* 507, 512, 41 *A.*2d 326 (Sup.Ct.1945). It connotes fundamental fairness.' *State v. Laganella,* 144 *N.J.Super.* 268, 284 [365 *A.*2d 224] (App.Div.1976), *app. dism.* 74 *N.J.* 256 [377 *A.*2d 652] (1977)[(1976)]." *Id.* at 593, 471 *A.*2d 805.

In *Heisler* we also relied on *Pearce, supra.* Although much has been written about *Pearce* and the decision has been distinguished and qualified in a number of ways,[2] its basic tenets remain good law and indeed the polestar of due process in this area. *See Curry v. New Jersey State Parole Board, supra,* 309 *N.J.Super.* 66, 706 *A.*2d 769; *State v. Pindale,* 279 *N.J.Super.* 123, 652 *A.*2d 237 (App.Div.), *certif. denied,* 142 *N.J.* 449, 663 *A.*2d 1357 (1995). Fundamental fairness dictates that defendant receive jail credit for the disputed period from the September 24, 1984 denial of the

---

[2] *See, e.g., Alabama v. Smith,* 490 *U.S.* 794, 109 *S.Ct.* 2201, 104 *L.Ed.*2d 865 (1989) (distinguishing *Pearce's* presumption of vindictiveness when initial conviction was based on a plea and subsequent conviction was from a trial.)

State's petition for certification to defendant's April 1, 1986 release on parole from the burglary convictions.

In summary, and phrased somewhat differently, defendant is entitled to credit for all the time he was incarcerated from his October 16, 1980 arrest on the murder charge until his sentencing on February 26, 1987, with the exception of that time period prior to his first murder trial when he was serving an eighteen-month sentence for the third and fourth degree offenses, which sentence began on November 18, 1980. Accordingly he is entitled to jail credits for the disputed period of September 24, 1984 to April 1, 1986, and for the period from November 3, 1980 to November 18, 1980. He is entitled to gap time for that period when he was actually serving the eighteen-month sentence, from November 18, 1980, up to the date of his parole on that sentence or his first conviction for murder, whichever event came first. The record does not reveal when he was so paroled, but we are confident that through the good offices of the Parole Board and perhaps the Department of Corrections, the State and defense counsel will be able to agree upon the appropriate date. If he was not paroled on the eighteen-month sentence by April 16, 1981, the date of his first murder conviction, he is nevertheless entitled to appropriate credit from that date through to February 26, 1987.

The matter is remanded for entry of a corrected judgment of conviction in accordance with this opinion.