26 A.3d 376

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. ANDREA HERNANDEZ, A/K/A ANDREA
ROSARIO, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. DERRICK WAYNE ROSE, A/K/A DERRICK W.
STEWART, DEFENDANT–APPELLANT.

Argued September 14, 2010—Decided June 8, 2011.

*Michael B. Jones,* Assistant Deputy Public Defender, argued the cause for appellants (*Yvonne Smith Segars,* Public Defender, attorney).

*Hillary K. Horton,* Deputy Attorney General, argued the cause for respondent in State v. Andrea Hernandez (*Paula T. Dow,* Attorney General of New Jersey, attorney).

*Sara B. Liebman,* Assistant Prosecutor, argued the cause for respondent in State v. Derrick Wayne Rose (*Theodore J. Romankow,* Union County Prosecutor, attorney).

Judge STERN (temporarily assigned) delivered the opinion of the Court.

We granted certification to consider the proper interpretation and application of *Rule* 3:21–8, the rule governing the award of jail credits, to cases involving defendants sentenced to imprisonment on multiple indictments. One case involves the disposition of charges in multiple counties; the other multiple charges in the same county. We hold that both defendants are entitled to precisely what the *Rule* provides: credits against all sentences "for any time served in custody in jail or in a state hospital between arrest and the imposition of sentence" on each case. Accordingly, we remand to the Law Division for a re-determination of the credits to be awarded in these cases, which we have consolidated for purposes of this opinion.

I.

In September and October 2006, defendant Andrea Hernandez allegedly took part in a series of armed robberies in Paterson,

with her co-defendant, Anthony Figueroa. Hernandez and Figueroa were arrested by Paterson police on October 25, 2006.[1]

On January 23, 2007, while Hernandez was in custody awaiting disposition of the Passaic County charges, Ocean County authorities charged her with third-degree burglary, *N.J.S.A.* 2C:18–2, and third-degree theft by unlawful taking, *N.J.S.A.* 2C:20–3, for an earlier theft committed in Ocean Township. She was apparently moved to the Ocean County Jail the day before.[2] On May 29, 2007, Hernandez pled guilty to the Ocean County burglary charge, and on August 24, 2007, she was sentenced to three years in the custody of the Commissioner of the Department of Corrections. The sentence was made "concurrent with any Passaic County sentence defendant may receive." The judgment of conviction also awarded Hernandez 213 days of jail credit for the "time spent in custody" between January 23 and August 23, 2007.[3] The other count of the indictment was dismissed. In the meanwhile, on April 12, 2007, a Passaic County Grand Jury indicted Hernandez on seven counts of first-degree robbery, *N.J.S.A.* 2C:15–1 and 2C:2–6; seven counts of third-degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4(d); eight counts of fourth-degree unlawful possession of a weapon, *N.J.S.A.* 2C:39–5(d); three counts of first-degree kidnapping, *N.J.S.A.* 2C:13–1(b)(2) and *N.J.S.A.* 2C:2–6; two counts of third-degree terroristic

---

[1] The pre-sentence report and judgment of conviction indicate that Hernandez was arrested and charged on October 25, 2006. However, that date is contradicted by other material in the record, including one count of the indictment, which charged Hernandez with an October 26, 2006, possession of weapons offense, and the detective's supplemental report detailing Hernandez's arrest. For purposes of this opinion we shall use the October 25, 2006, date, but the subject can be developed at the remand proceedings.

[2] The judgment of conviction reflects that the indictment was returned on January 20, 2007, that she was "arrested" on January 22, 2007, and entered a not guilty plea on April 29, 2007.

[3] The Passaic County presentence report indicates that Hernandez received 220 days of jail credit, and defendant is asking for 220 days of jail credits on the Passaic sentence.

threats, *N.J.S.A.* 2C:12–3(a) and/or *N.J.S.A.* 2C:12–3(b); one count of second-degree burglary, *N.J.S.A.* 2C:18–2; and one count of first-degree carjacking, *N.J.S.A.* 2C:15–2(a)(1) and *N.J.S.A.* 2C:2–6.

On October 4, 2007, pursuant to a negotiated plea agreement, Hernandez pled guilty to the seven counts of first-degree robbery embodied in the Passaic County indictment. In exchange the State recommended the remaining counts of the indictment be dismissed and that concurrent sentences of twenty years, eighty-five percent of which would be subject to parole ineligibility pursuant to the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2, be imposed. The State also recommended that the sentence run concurrent to the three-year Ocean County sentence that Hernandez was serving at the time.

On February 1, 2008, the Law Division in Passaic County imposed a sentence consistent with the negotiated recommendation. However, at the sentencing proceeding, Hernandez objected to the amount of jail credit that she would receive. Hernandez believed that she was entitled to more than the ninety-day credit given for time she spent in custody from her arrest in Passaic County on October 25, 2006, until January 22, 2007, the day she was moved to the Ocean County Jail. Although the record is unclear, it appears that Hernandez specifically argued (as she does now) that she should also receive credit towards her Passaic County sentence for 220 days she spent in custody between the Ocean County "arrest" and sentencing for the Ocean County offense. The sentencing court rejected Hernandez's request, noting that the requested credit had already been applied against her Ocean County sentence. She was thus awarded only the ninety days of jail credit spent in Passaic County solely attributable to the Passaic County offenses. The Passaic County judgment also awarded Hernandez 161 days of gap-time credit for the period that she spent in custody beginning August 24, 2007—the date of her Ocean County sentence—until January 31, 2008—the day preceding the Passaic County sentence.

As a result, in the aggregate, Hernandez seeks "jail credits" for every day from October 25, 2006, the day of her arrest in Passaic County, to August 23, 2007, the day before her Ocean County sentence was imposed, and "gap-time" credits against the Passaic County judgment from August 24, 2007, the date of the Ocean County sentence, to January 31, 2008, the day before imposition of the Passaic County sentence. *See N.J.S.A.* 2C:44–5(b)(2). In other words, she seeks an additional 220 days of jail credits under *Rule* 3:21–8.

## II.

On May 4, 2006, defendant Derrick Wayne Rose allegedly sold cocaine and heroin to an undercover police officer. On August 14, 2006, he allegedly sold crack cocaine to another undercover Plainfield police officer. Rose was not arrested at the time. On January 26, 2007, Rose committed a theft in Linden, another municipality in Union County. He was arrested that day by Linden police.[4]

On April 26, 2007, defendant was indicted for distribution of a controlled dangerous substance (CDS) and distribution within 500 feet of a public housing facility, for the alleged sale on May 4, 2006. On May 1, 2007, another indictment embodying the same charges was returned for the August 14, 2006, CDS offenses. On May 31, 2007, defendant was charged with the Linden offenses,

---

[4] Neither the plea nor sentence transcript develops the jail credit issue. The appeal was heard on the Sentence Oral Argument calendar, and no document of relevance was presented to the court. On the appeal to us, the parties agree defendant was not arrested when the CDS transactions occurred. The presentence report, which, like the plea form, plea transcript, sentence transcript, and judgment, was before the Appellate Division, notes at the time of the May 4, 2006, offense "the defendant was not arrested. On [January 26, 2007], he was arrested on another matter and subsequently charged with this offense. Therefore additional jail credit is given on [the theft offense]." The same notation was included on the presentence report for the second CDS offense. The complaints are not in the record.

third-degree burglary, in violation of *N.J.S.A.* 2C:18–2, and third-degree theft by unlawful taking, in violation of *N.J.S.A.* 2C:20–3.[5]

On October 29, 2007, pursuant to a negotiated plea agreement with the State, Rose pled guilty to third-degree theft by unlawful taking for the Linden offense and to two counts of third-degree distribution of CDS for the Plainfield offenses.[6] In exchange, the State recommended dismissal of the other charges and recommended that Rose serve five-year sentences with a three-year period of parole ineligibility for the CDS offenses to run concurrently with each other and consecutively to a four-year sentence for the theft offense.

At the sentencing hearing on January 18, 2008, Rose requested that he be placed in a drug treatment program. Although the court was sympathetic to Rose's request, it stated that it would not deviate from the minimum sentence prescribed in the plea agreement because Rose had eighteen prior convictions,[7] and, under the *Brimage* Guidelines,[8] it had no discretion to order a period of parole ineligibility below the three-year mandatory-minimum sentence for the CDS offense. *See N.J.S.A.* 2C:35–12; 2C:43–6f. However, the court did direct that Rose receive drug treatment and vocational training in prison.

The court imposed two concurrent five-year sentences with three years of parole ineligibility on the drug charges (CDS sentence), to run consecutively with a four-year sentence for the theft charge. It found that aggravating factors 3, 6, and 9

---

[5] The judgment reflects the arrest date of January 26, 2007, and grants jail credits of 357 days from January 26, 2007, to the date of sentencing on January 18, 2008.

[6] The plea form for the Linden indictment is not in the record, but there is no dispute about the plea or recommendation.

[7] Rose's criminal history includes additional convictions for CDS offenses proscribed by *N.J.S.A.* 2C:35–5.

[8] *See State v. Brimage,* 153 *N.J.* 1, 706 *A.2d* 1096 (1998).

outweighed the nonexistent mitigating factors. *See N.J.S.A.* 2C:44–1(a), –1(b). The defendant was awarded one day of jail credit for the May 4, 2006, offense. The judgment reflects an "arrest" that day. It is unclear why this date and credit are noted. To the contrary, the police reports attached to the presentence report reflect no "arrest" that date, and—as already noted— the parties agree there was no arrest. No arrest date was included in the relevant portion of the other CDS judgment, and no credits were granted. For the Linden offenses the judgment reflects the January 26, 2007, arrest and grants 357 days of jail credit from the January 26, 2007, arrest to January 17, 2008, the day before sentencing.

## III.

As already noted, in the Law Division Hernandez sought more jail credits beyond the ninety days awarded from October 25, 2006, to January 22, 2007, and the 161 days of gap-time credit from August 24, 2007, to January 31, 2008. The judge denied the request, stating, "[y]ou can't get credit for an—an indictment in Ocean and credit here for—for the same time period."

Before the Appellate Division, Hernandez challenged the Passaic County sentence and asserted that the sentencing court should have (1) found that a mitigating factor was supported by the record and (2) considered granting Hernandez additional credits towards her twenty-year sentence. On the latter point, counsel noted that Hernandez received jail credits for time spent in custody between her "arrest" in Ocean County and her three-year Ocean County sentence, which is not governed by NERA, but not towards her twenty-year Passaic County sentence, which is governed by NERA. Therefore, counsel argued that

following *State v. Hill*[9] and *State v. Marnin*[10] and several other cases that follow that, the judge should have considered his discretionary ability to award credit

---

[9] 208 *N.J.Super.* 492, 506 *A.2d* 373 (App.Div.), *certif. denied,* 104 *N.J.* 412, 517 *A.2d* 411 (1986).

[10] 108 *N.J.Super.* 442, 261 *A.2d* 682 (App.Div.), *certif. denied,* 55 *N.J.* 598, 264 *A.2d* 70 (1970).

toward the NERA sentence where the credit for day to day jail had been subsumed in a sentence that meant absolutely nothing in terms of her future.

That is to say, whether [ ] consecutive or concurrent, by the time she finishes the NERA [twenty] she will have maxed out the [three]-year sentence out of Ocean County. So, to apply those credits to that sentence was to essentially extend her term that much the more. And the judge had the discretion under *Hill* and *Marnin* to apply those credits to the sentence, and I believe it should be remanded at least for him to consider whether that was appropriate because he certainly made no statement to the contrary.

Hernandez's counsel also maintained that applying gap-time credits to the "back end," as opposed to the "front end," of a defendant's NERA sentence would be "meaningless" to the defendant and contravene this Court's mandate in *Booker v. New Jersey State Parole Board*, 136 *N.J.* 257, 642 *A.*2d 984 (1994), that gap-time credits be awarded in a meaningful way. Accordingly, counsel suggested that the sentencing court "should at least have said[,] I have considered the possibility, I've considered my authority to use these credits as discretionary credits as a grant of front end jail time credit[,] and I choose not to do so."

In response the State maintained that the sentencing court adequately explained why Hernandez was getting gap-time credit, not jail credit, for the time that she spent in custody in Ocean County since August 24, 2007, the sentencing date in Ocean County, and why she was getting jail credit only for the time "she has spent only incarcerated on the Passaic offenses." Therefore, the State argued for affirmance because the sentencing court "definitely looked at [the credits] carefully, knew the dates and knew what [it] was giving when [it] gave it."

In an unpublished order, the Appellate Division affirmed the trial court's judgment. The panel found "no abuse of discretion with respect to the application of jail credits." We thereafter granted certification. *State v. Hernandez*, 201 *N.J.* 154, 988 *A.*2d 1176 (2010).

On September 22, 2009, at the Sentence Oral Argument before the Appellate Division, Rose's counsel argued that Rose's credits should be reallocated and applied towards the three-year parole bar on his five-year CDS sentence so as to improve his chances of being accepted earlier into a drug treatment program, and that the sentencing court was not obligated to order the four-year theft sentence to run consecutively to the CDS sentence.[11] In regard to the credits argument, counsel explained that "prison programs and . . . release to inpatient programs are often predicated on the availability of parole for the individual" and asserted that the manner in which the credits were awarded to Rose—one day of jail credit towards the five-year sentence with a three-year parole ineligibility term and 357 days of jail credit on the consecutive four-year sentence—"could not be worse awarded in terms of moving Mr. Rose from the State Prison system to drug pro-grams." Specifically, counsel noted that "by th[e] time [Rose] serves the three-year parole ineligibility feature on the two drug charges he will be parole eligible with or without [the 357 days of jail credit] on his consecutive four-year sentence." In light of that, counsel maintained that the sentencing court should have allocated Rose's jail credits in a manner designed to shorten Rose's period of parole ineligibility. He also urged the panel to remand to the sentencing court "to consider *State v. Marnin, State v. Hill, State v. Fyffe*,[12] [and] *State v. Grate*," [13] because "all of those cases . . . say in a situation like this the judge has the authority to award those credits to both sentences reducing, thereby, the period of parole ineligibility." The State countered that "the [L]egislature has determined that there's a three-year

---

[11] As to the latter contention counsel merely stated "my second point [] is that I do not see that there's any demand under *Brimage* that the four-year sentence be consecutive" and did not develop it further. Neither the State nor the panel addressed that statement.

[12] 244 *N.J.Super.* 310, 582 *A.*2d 812 (App.Div.1990).

[13] 311 *N.J.Super.* 456, 710 *A.*2d 554 (App.Div.1998).

mandatory sentence for this" and that "to say that [Rose] should be ... given extra special credits or a break at this stage in his life and his criminal career is ... not appropriate."

In an unpublished order the Appellate Division affirmed the trial court's judgment on Rose's appeal. The panel expressly "reject[ed] defendant's argument as to the reallocation of jail credits." This Court then granted certification. *State v. Rose,* 201 *N.J.* 155, 988 *A.*2d 1177 (2010).

## IV.

A defendant may be eligible to receive jail credits under *Rule* 3:21–8 or gap-time credits under *N.J.S.A.* 2C:44–5(b)(2) to reduce the time to be served on his sentence.

*Rule* 3:21–8 provides that "[t]he defendant shall receive credit on the term of a custodial sentence for any time served in custody in jail or in a state hospital between arrest and the imposition of sentence." *Ibid.* Such credit for pre-sentence custody is commonly labeled " 'jail credits.' " *Richardson v. Nickolopoulos,* 110 *N.J.* 241, 242, 540 *A.*2d 1246 (1988). Jail credits were conceived as a matter of equal protection or fundamental fairness and a means of avoiding the double punishment that would result if no such credits were granted. *See id.* at 250 n. 2, 540 *A.*2d 1246. Otherwise, "the judicial sentence would be cumulative to jail time spent by a presumably innocent but poor defendant" who could not make bail or conditions of pretrial release. *Ibid.* Although "*R[ule]* 3:21–8 expresses the public policy of the State and should be liberally construed," *State v. Beatty,* 128 *N.J.Super.* 488, 491, 320 *A.*2d 514 (App.Div.1974), New Jersey courts have interpreted the *Rule* to allow jail credits only for "such confinement as is attributable to the arrest or other detention resulting from the particular offense." *State v. Black,* 153 *N.J.* 438, 456, 710 *A.*2d 428 (1998)(internal quotations and citation omitted); *accord State v. Hemphill,* 391 *N.J.Super.* 67, 70, 917 *A.*2d 247 (App.Div.), *certif. denied,* 192 *N.J.* 68, 926 *A.*2d 853 (2007); *State v. Mercadante,* 299 *N.J.Super.* 522, 529, 691 *A.*2d 819 (App.Div.), *certif. denied,* 150

*N.J.* 26, 695 *A.*2d 668 (1997); *State v. Allen,* 155 *N.J.Super.* 582, 584, 383 *A.*2d 138 (App.Div.), *certif. denied,* 77 *N.J.* 472, 391 *A.*2d 487 (1978); *State v. Council,* 137 *N.J.Super.* 306, 308, 349 *A.*2d 71 (App.Div.1975); *see also State v. Hill, supra,* 208 *N.J.Super.* at 495, 506 *A.*2d 373 (*Rule* 3:21-8 "only applies to confinement directly attributable to the particular offense giving rise to the initial incarceration.") (quoting *In re Hinsinger,* 180 *N.J.Super.* 491, 499, 435 *A.*2d 850 (App.Div.), *certif. denied,* 88 *N.J.* 494, 443 *A.*2d 708 (1981)) *certif. denied,* 104 *N.J.* 412, 517 *A.*2d 411 (1986). When the *Rule* preconditions for the application of jail credits are satisfied, the award of such credits is mandatory, not discretionary. *Hemphill, supra,* 391 *N.J.Super.* at 70, 917 *A.*2d 247 (citation omitted). "Where the [*Rule*] does not apply," however, some lower courts have held that "the credit may nevertheless be awarded based on considerations of fairness, justice and fair dealings." *Ibid.* (citation omitted).

Jail credits are "day-for-day credits," *Buncie v. Dep't of Corr.,* 382 *N.J.Super.* 214, 217, 888 *A.*2d 483 (App.Div.2005), *certif. denied,* 186 *N.J.* 606, 897 *A.*2d 1061 (2006), that are applied to the "front end" of a defendant's sentence, meaning that he or she is entitled to credit against the sentence for every day defendant was held in custody for that offense prior to sentencing. *See Booker, supra,* 136 *N.J.* at 263, 265, 642 *A.*2d 984. The practical effect of that allocation is that jail credits will "reduce a[ ] [parole] ineligibility term as well as the sentence imposed." *State v. Mastapeter,* 290 *N.J.Super.* 56, 64, 674 *A.*2d 1016 (App.Div.), *certif. denied,* 146 *N.J.* 569, 683 *A.*2d 1164 (1996).

*N.J.S.A.* 2C:44–5(b) provides for "gap-time" credits:

When a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the former sentence, other than an offense committed while in custody:

. . . .

(2) Whether the court determines that the terms shall run concurrently or consecutively, the defendant shall be credited with time served in imprisonment on the prior sentence in determining the permissible aggregate length of the term or terms remaining to be served[.]

[*Ibid.*]

The credit awarded under *N.J.S.A.* 2C:44–5(b) is referred to as "gap-time credit" because it awards a defendant who is given two separate sentences on two different dates credit toward the second sentence for the time spent in custody since he or she began serving the first sentence. The primary purpose of allowing such credit " 'is to avoid the manipulation of trial dates to the disadvantage of defendants,' " *State v. Carreker,* 172 *N.J.* 100, 105, 796 *A.*2d 847 (2002) (quoting *Booker, supra,* 136 *N.J.* at 260, 642 *A.*2d 984), and to " 'counteract any dilatory tactics of the prosecutor' in pursuing a conviction for another offense after a defendant has been sentenced on the previous offense." *Ibid.* (quoting *State v. Hall,* 206 *N.J.Super.* 547, 550, 503 *A.*2d 344 (App.Div.1985)). However, gap-time credits are appropriate even in the absence of evidence of intentional prosecutorial delay. *State v. Franklin,* 175 *N.J.* 456, 463–64, 815 *A.*2d 964 (2003).

To demonstrate an entitlement to gap-time credit, a defendant must establish three facts: "(1) the defendant has been sentenced previously to a term of imprisonment[;] (2) the defendant is sentenced subsequently to another term[;] and (3) both offenses occurred prior to the imposition of the first sentence." *Id.* at 462, 815 *A.*2d 964 (citing *Carreker, supra,* 172 *N.J.* at 105, 796 *A.*2d 847). If the defendant meets those requirements, the sentencing court is obligated to award gap-time credits. *Ibid.* (citing *Carreker, supra,* 172 *N.J.* at 105, 796 *A.*2d 847). Those credits apply towards the defendant's aggregate sentence, which is calculated as the length of the defendant's longest term when he or she is ordered to serve multiple sentences concurrently and is " 'equal to the sum of all terms' " when he or she is ordered to serve multiple sentences consecutively. *Richardson, supra,* 110 *N.J.* at 246, 540 *A.*2d 1246 (quoting *N.J.S.A.* 2C:44–5(e)).

Unlike jail credits, gap-time credits are applied to the "back end" of a sentence. *Booker, supra,* 136 *N.J.* at 260, 642 *A.*2d 984. If no parole ineligibility term is imposed, gap-time credits will advance the date on which a defendant first becomes

eligible for parole—specifically, the point at which the defendant has served one-third of his aggregated sentence minus credits. *Booker, supra,* 136 *N.J.* at 264–65, 642 *A.*2d 984; *N.J.S.A.* 30:4–123.51(a). However, under the circumstances presented in *Booker,* "we agree[d] with the Appellate Division that 'a period of parole disqualifier is an absolute term, against which there are to be no credits (other than jail credits).' Accordingly, we reject[ed] Booker's contention that gap-time credit should reduce his parole bar." *Supra,* 136 *N.J.* at 263, 642 *A.*2d 984 (citing *Booker v. N.J. State Parole Bd.,* 265 *N.J.Super.* 191, 207, 625 *A.*2d 1153 (1993)).[14] *See also Richardson, supra,* 110 *N.J.* at 254–55, 540 *A.*2d 1246 ("[W]e reject defendant's argument that the 2C:44–5b(2) 'gap-time' credit serves to reduce a judicial or statutory parole bar by a 'front-end' reduction of aggregated sentences.").

 Hernandez contends she would serve her entire twenty-year sentence (reduced by good time comportment and work credits) before the seventeen-year parole bar is reached, thereby rendering the gap-time credits "meaningless."

*N.J.S.A.* 30:4–123.51(a) clearly provides:

Each adult inmate sentenced to ... a specific term of years at the State Prison or the correctional institution for women shall become primarily eligible for parole after having served any judicial or statutory mandatory minimum term, ... less commutation time for good behavior pursuant to ... [*N.J.S.A.*] 30:4–140 and credits for diligent application to work and other institutional assignments pursuant to ... [*N.J.S.A.*] 30:4–92. Consistent with the provisions of the New Jersey Code of Criminal Justice ( [*N.J.S.A.*]2C:11–3, 2C:14–6, 2C:43–6, 2C:43–7), commutation and work credits shall not in any way reduce any judicial or statutory mandatory minimum term and such credits accrued shall only be awarded subsequent to the expiration of the term.

[*Ibid.*]

---

14 It is significant to note the facts of *Booker.* The defendant in *Booker* had received a fifty-year sentence with twenty-five years of parole ineligibility. *Booker, supra,* 136 *N.J.* at 262, 642 *A.*2d 984. The defendant was entitled to 106 days of gap-time credit. *Ibid.* He argued that the back end of his parole-ineligibility period had to be reduced by 53 days of gap time. *Ibid.* We rejected that argument and held that the 106 days of gap-time credit came entirely off the back end of the sentence and therefore did not reduce any of the parole-disqualifier period. *Ibid.*

Under *N.J.S.A.* 30:4–140, a defendant like Hernandez who faces a mandatory-minimum sentence of seventeen years imprisonment is entitled to receive as many as 1,896 days of commutation credit against her base term "for continuous orderly deportment," *ibid.,* and under *N.J.S.A.* 30:4–92, a defendant may receive work credits "not [to] exceed one day for each five days of productive occupation." *Ibid.* Therefore, particularly due to projected commutation and work credits, Hernandez will almost certainly "max out" on her twenty-year base term when the seventeen-year minimum term is satisfied. *See Salvador v. Dep't of Corr.,* 378 *N.J.Super.* 467, 469–70, 876 *A.*2d 309 (App.Div.) (noting that " '[m]ost NERA inmates will accumulate sufficient credits to 'max out' and be released immediately upon completion of their [eighty-five percent] parole bar' " and holding that credits cannot be used to reduce mandatory five-year period of parole supervision required by NERA (quoting *State v. Freudenberger,* 358 *N.J.Super.* 162, 169, 817 *A.*2d 371 (App.Div.), *disapproved on other grounds, State v. Johnson,* 182 *N.J.* 232, 242 n. 3, 864 *A.*2d 400 (2005))); *certif. denied,* 185 *N.J.* 295, 884 *A.*2d 1265 (2005); *Meyer v. N.J. State Parole Bd.,* 345 *N.J.Super.* 424, 429–30, 785 *A.*2d 465 (rejecting NERA defendant's argument that gap-time credit not awarded against the period of parole ineligibility is "rendered meaningless or 'bogus,' " because "the Legislature has spoken in clear and unambiguous terms that a person convicted of a NERA offense must serve eighty-five percent of the sentence imposed before becoming eligible for release"); *see also Booker, supra,* 136 *N.J.* at 267, 642 *A.*2d 984 (noting that "those offenders with long parole bars will have 'maxed out' long before the credit becomes relevant"); *State v. Webster,* 383 *N.J.Super.* 432, 437, 892 *A.*2d 688 (App.Div.2006) (finding "evidence of a clear intent by the Legislature when enacting NERA in 1997 to require defendants subject to the Act's provisions to serve the full eighty-five percent period of their parole disqualification prior to any release from custody"), *aff'd o.b.,* 190 *N.J.* 305, 920 *A.*2d 100 (2007).

Hernandez's reliance on *Booker* for the proposition that sentencing courts can impose discretionary jail credits is misplaced,

and the language she cites is taken out of context. In *Booker*, a gap-time credit case, we expressed the desire to avoid creating "'bogus credits,' a calculation without any effect." *Supra*, 136 *N.J.* at 267, 642 *A.*2d 984. As a result, we concluded that although gap-time credits should be applied to the "back end," as opposed to the "front end," of sentences, those credits would serve to advance the "primary parole eligibility date" for defendants facing sentences *"when neither a judicial nor a statutory parole bar has been imposed* [.]" *Id.* at 261, 263–65, 642 *A.*2d 984 (emphasis added).[15]

We adhere to *Richardson* and *Booker* and reject Hernandez's contention that her gap-time credit should reduce her parole bar. However, those cases do not address our *Rule* 3:21–8 or jail credits for time spent in custody *before sentencing* following arrest on other charges.

Despite our numerous opinions on gap-time credits, *see, e.g., Carreker, supra*, 172 *N.J.* 100, 796 *A.*2d 847; *Richardson, supra*, 110 *N.J.* 241, 540 *A.*2d 1246; *Booker, supra*, 136 *N.J.* 257, 642 *A.*2d 984; *Franklin, supra*, 175 *N.J.* 456, 815 *A.*2d 964, and on credits for time on parole or probation upon revocation, *see State v. Oquendo*, 133 *N.J.* 416, 627 *A.*2d 1127 (1993); *State v. Rosado*, 131 *N.J.* 423, 621 *A.*2d 12 (1993); *State v. Williams*, 81 *N.J.* 498, 410 *A.*2d 251 (1980), we have addressed jail credits only occasionally.

In *State v. Towey*, 114 *N.J.* 69, 552 *A.*2d 994 (1989), we clarified the meaning of a custodial sentence under *Rule* 3:21–8. There the defendant pled guilty to aggravated manslaughter. *Id.* at 73, 552 *A.*2d 994. She was sentenced to a ten-year term of incarceration, with a parole ineligibility period of five years. *Ibid.* At issue was whether the Graves Act imposed limits on a sentencing judge's discretion regarding the term of parole ineligibility and what factors affect parole ineligibility terms. *Id.* at 72–73, 552 *A.*2d

---

[15] Rose was not entitled to receive any gap-time credits because he was sentenced for his theft offense and two CDS offenses all on the same date.

994. After discussing the sentencing issues, *id.* at 76–85, 552 *A.*2d 994, we considered whether the trial court erred in denying jail credit for the defendant's time in a psychiatric hospital following a suicide attempt. *Id.* at 85, 75–76, 552 *A.*2d 994. When she entered the hospital, she had done so voluntarily and at a time when she was not yet charged. *Id.* at 85, 552 *A.*2d 994. We accordingly rejected the defendant's contention that, because the bail package provided for her continued stay at the institution, she was effectively in custody within the meaning of *Rule* 3:21–8. *Id.* at 85–86, 552 *A.*2d 994. Although the *Rule* "should be liberally construed" to avoid defendants being incarcerated beyond their maximum sentences, we held the defendant's hospital confinement was not custodial within the meaning and requirements of the *Rule. Ibid.* (citations omitted). *See also State v. Lee,* 60 *N.J.* 53, 286 *A.*2d 52 (1972) (no difference between imposition of custodial sentence and of custodial commitment under Sex Offender Act).

In *State v. Black, supra,* 153 *N.J.* at 455–61, 710 *A.*2d 428, we assessed the application of *Rule* 3:21–8 where a defendant released on parole was returned to custody based on conduct that led to revocation of parole and further service of the sentence on which he was paroled, as well as a conviction on the new charge of absconding. The defendant claimed on appeal that pursuing both the absconding charge and the parole revocation violated "principles of double jeopardy and fundamental fairness," and that the time he spent incarcerated between his absconding arrest and sentencing warranted a credit against the absconding sentence. *Id.* at 441–42, 710 *A.*2d 428. We also considered whether the defendant "should have received jail credit against his absconding sentence for the full time he spent in custody between his arrest and sentencing on that charge." *Id.* at 455–56, 710 *A.*2d 428.

*Black* was originally sentenced to a three-year term for CDS violations. *Id.* at 441, 710 *A.*2d 428. He was released on parole but failed to report to his parole officer. *Ibid.* A parole warrant was issued, and he was also indicted for absconding. *Id.* at 441–42, 710 *A.*2d 428. The defendant was eventually returned to

custody at which point his parole was formally revoked, and he was ordered to complete the remaining 337 days of imprisonment on the CDS sentence, commencing as of the date of his return to custody. *Id.* at 442, 710 *A*.2d 428. The defendant also pled guilty to the absconding charge in return for the State's agreement recommending a three-year sentence to run concurrently with defendant's original CDS sentence, and he was sentenced in accordance with the plea. *Ibid.* Although the 103 days spent in custody were applied to the parole violation, the defendant sought to have the 103 days applied to his absconding sentence as well. *Id.* at 442, 710 *A*.2d 428.

In examining the relevant caselaw, we noted that *Rule* 3:21–8 "has been interpreted to require credit only for 'such confinement as is attributable to the arrest or other detention resulting from the particular offense.' " *Id.* at 456, 710 *A*.2d 428 (citing *State v. Allen, supra,* 155 *N.J.Super.* at 585, 383 *A*.2d 138). We further noted that "the record suggests that [Black's] return to custody arose under the parole warrant," *id.* at 456, 710 *A*.2d 428, and that *N.J.S.A.* 30:4–123.62(a)(2) provides that "[n]o parolee held in custody on a parole warrant shall be entitled to release on bail." *Id.* at 459, 710 *A*.2d 428 (citing *N.J.S.A.* 30:4–123.62(a)(2)). Therefore, we held that

> when a parolee is taken into custody on a parole warrant, the confinement is attributable to the original offense on which the parole was granted and not to any offense or offenses committed during the parolee's release. If the parole warrant is thereafter withdrawn or parole is not revoked, and the defendant is convicted and sentenced on new charges based on the same conduct warrant, against revoked, between that led to the initial parole then jail time should be credited the new sentence. If parole is then the period of incarceration the parolee's confinement pursuant to the parole warrant and the revocation of parole should be credited against any period of reimprisonment ordered by the parole board. Any period of confinement following the revocation of parole but before sentencing on the new offense also should be credited only against the original sentence, except in the rare case where the inmate has once again become parole eligible on the original offense but remains incarcerated because of the new offense.
>
> [*Id.* at 461, 710 *A*.2d 428.]

Applying these principles, the Court affirmed the grant of three days credit, rather than the 103 days the defendant sought on the absconding conviction. *Id.* at 442, 461–62, 710 *A*.2d 428.

Finally, in *State v. Carreker, supra*, 172 *N.J.* at 115, 796 *A.*2d 847, we also addressed sua sponte the issue of whether the defendant would be entitled to presentence jail credits where she was serving a custodial sentence in New York but was returned to New Jersey pursuant to the Interstate Agreement on Detainers (IAD), *N.J.S.A.* 2A:159A–1 to –15, in order to resolve pending charges here. *Id.* at 104, 796 *A.*2d 847. While Carreker was incarcerated in New York, officials in New Jersey had lodged a detainer against her pursuant to an arrest warrant arising out of a Somerville, New Jersey incident. *Ibid.* Carreker filed a request under the IAD to resolve the New Jersey charges. *Ibid.* She was extradited from New York to the Somerset County jail and reached a plea agreement with the State under which she would serve a four-year term to run concurrent with her New York sentence. *Ibid.* The defendant did not seek jail credits, but we nevertheless explained:

> For completeness, we note that defendant has not requested "jail credit" under *Rule* 3:21–8 for the time spent in Somerset County awaiting disposition of the New Jersey offense; nor would she be entitled to such credit on the record presented. Generally, that form of credit applies to confinement attributable to the offense that gave rise to the sentence. *State v. Black,* 153 *N.J.* 438, 456, 710 *A.*2d 428 (1998). In this case, defendant's presentence confinement in Somerset County was attributable not to a New Jersey offense, but to the fact that, under *N.J.S.A.* 2A:159A–5(f) of the IAD, she was required to continue her term of incarceration under her New York sentence. Under that circumstance, New Jersey jail credit does not apply.
>
> [*Id.* at 115, 796 *A.*2d 847.]

In *Black* and *Carreker*, the defendants were serving a custodial sentence, and we concluded they were not entitled to presentence jail credits against a new sentence for time served in custody while those new charges were pending. Under those circumstances, we declined to read *Rule* 3:21–8 as requiring additional credit.[16]

---

[16] Because the dissent relies on *Carreker,* we emphasize our adherence to that opinion, which we do not believe is relevant to the issues involved in this case. The defendant was serving a sentence in New York when brought back to New Jersey for trial and housed in the Somerset County Jail.

The custodial status of Hernandez and Rose differs from that of the defendants in *Black* and *Carreker*. Hernandez and Rose seek jail credit for time spent in presentence custody on multiple charges and are not seeking jail credits for time accrued after imposition of a custodial sentence. We have not previously addressed these circumstances or the meaning of *Rule* 3:21–8 when a defendant who is incarcerated awaiting disposition on charges is also held awaiting disposition on other charges.

The *Rule* governing jail credits has read as it now reads since 1969. *R.* 3:21–8. *See R.R.* 3:7–10 (prior to 1969). However, there have been numerous developments in our criminal procedure and law of sentencing since the *Rule* was adopted that impact on its proper interpretation.

The Code of Criminal Justice was adopted effective September 1, 1979, *N.J.S.A.* 2C:98–4, long after the *Rule* was placed in its present form. The Code introduced the concept of presumptive sentences with degrees of crimes, ranges of sentence for each degree, and a presumptive sentence at the midpoint. *N.J.S.A.* 2C:43–6.[17] In some instances extended terms may or must be imposed. *N.J.S.A.* 2C:43–6, –7, –3. The Code sentencing provisions also introduced the concept of discretionary and mandatory parole ineligibility terms as a result of which up to one-half of the sentence may, or even must, be served before parole eligibility. *N.J.S.A.* 2C:43–6(b), –6(f), –7(b). Subsequently, the No Early Release Act, *N.J.S.A.* 2C:43–7.2, was enacted and requires eighty-five percent of a term to be served on sentences for certain first- and second-degree crimes. Moreover, *N.J.S.A.* 2C:44–5 detailed guidelines and principles regarding multiple sentences.

Mandatory and discretionary parole ineligibility terms were essentially unknown to our law of sentencing when *Rule* 3:21–8 was first adopted and interpreted, *see, e.g., Allen, supra,* 155 *N.J.Super.* 582, 383 *A.*2d 138; *Council, supra,* 137 *N.J.Super.* 306,

---

[17] There are no more presumptive terms. *State v. Natale,* 184 *N.J.* 458, 878 *A.*2d 724 (2005).

349 *A.*2d 71; *Marnin, supra,* 108 *N.J.Super.* 442, 261 *A.*2d 682, and the *Rule* and cases did not contemplate the impact of an ineligibility term or order of sentence imposition might have on the real time consequences of a sentence. Moreover, as already noted, to encourage the simultaneous disposition of charges, the Code of Criminal Justice provides that anyone who is sentenced for a crime occurring before a prior sentence is to receive "gap-time" credit for the period of time defendant spent in custody between the prior and new sentence. *N.J.S.A.* 2C:44–5(b)(2). The Code, thus, seeks to promote disposition of all open charges against a defendant to expedite any incarceration and rehabilitation.

Around the same time as the Code was adopted, the Judiciary, with the participation of the Attorney General, New Jersey State Bar Association, and Public Defender, sponsored the 1980 and 1986 Judicial Conferences devoted to the promotion of speedy trials in criminal cases. *See Reports of Task Force on Speedy Trial,* "An approach to expeditious processing of criminal cases," 105 *N.J.L.J.* 521 (June 5, 1980); *Report of Task Force on Speedy Trial,* 117 *N.J.L.J.* 747 (June 5, 1986). As a result of the conferences and subsequent developments, our rules were amended to promote more expeditious processing and disposition of criminal cases. For example, *Rule* 3:25A–1 was adopted to promote the simultaneous disposition by plea of charges pending in several counties. *See ibid.* Hence, sentencing on all open cases could be simultaneously imposed where, as here, they were disposed by plea.

In this context it is inconceivable that two defendants sentenced to the same sentences for the same crimes in two different counties should actually serve different amounts of real time depending only on the sequence and timing of the imposition of sentence. Yet that may be the consequence of a rule which does not provide credits for all time spent in custody between arrest and imposition of the first sentence. Had Ms. Hernandez remained in Passaic County before entering her plea and being

sentenced in Ocean County, or had she been returned to Passaic immediately after her plea was entered in Ocean, and was sentenced in Passaic first, all time spent in presentence custody would have reduced the parole ineligibility term imposed in Passaic, whereas it did not under the sentence imposed, merely because she was sentenced in Ocean first. Neither the Code of Criminal Justice nor our rules of procedure contemplate that the real time a defendant is to serve in custody should turn on which case a prosecutor or court decides to move first. In any event, in this case the defendant remained in custody on the Passaic charges while in Ocean County. It appears that she did not make bail and was simultaneously in custody on the charges filed in both counties until she was sentenced in Ocean. Accordingly, Ms. Hernandez should be entitled to jail credit on the Passaic County sentence for the time she spent in custody between her Passaic County arrest and the date sentence was imposed in Ocean County (at which time her custodial status changed by virtue of the fact she began to serve a sentence).

There is nothing new or extraordinary in this holding. Prior to sentencing on pending charges, a defendant accrues and is entitled to jail credits for time spent in custody, but once the first sentence is imposed a defendant is only entitled to gap-time credits for time accrued thereafter when sentenced on the other charges.

The same principles apply to the Rose matter. Unless part of a negotiated agreement, the amount of real time to be served on a sentence should not depend on which matter is disposed first, if they are not simultaneously disposed, or even on the prosecutor's joinder practice.[18] If multiple charges are em-

---

[18] "The [Minnesota] supreme court has in recent years shifted the focus in jail credit cases away from the issues of whether the time was served 'in connection with' the current offense and whether a 'hold' was placed on the defendant. The present standard is that the amount of credit awarded should not turn on irrelevant concerns or on factors subject to manipulation by the prosecution." *State v. Fritzke,* 521 *N.W.*2d 859, 861 (Minn.Ct.App.1994)(citing *State v. Goar,* 453 *N.W.*2d 28, 29–30 (Minn.1990)).

bodied in a single indictment and two or more counts are disposed of, the total amount of jail credits reduces the aggregate custodial sentence imposed. After all, the aggregate number of jail credits is listed at the bottom of the judgment embodying one or more convictions. *R.* 3:21–5.[19] If two thefts or CDS offenses are deemed part of a single transaction embodied in one indictment, the credits might have different consequences if the same consecutive sentences are embodied in a single judgment than if they are embodied in separate indictments and the credits applied only to one. The credits applicable to each might depend on whether the judge, prosecutor, bail unit, or even the defendant moved to revoke bail on the first matter after the defendant was arrested on the second or subsequent charge. The issue of credits simply cannot turn on such happenstance. In fact, the record in the Rose case omits any consideration of the fact that in accepting Rose's guilty plea, the judge consolidated bail. Rose was, at least from that point of time, in custody on all three matters and traditionally entitled to "jail credits" on all charges thereafter.

Accordingly, we interpret *Rule* 3:21–8 to provide exactly what it states in plain language, and prosecutors and defendants negotiating plea recommendations as well as sentencing judges should so understand it.[20] The *Rule* must be consistently applied to promote uniformity in sentencing; there is no room for discretion in

---

[19] Our judgment of conviction form has for years included a single space for jail credits, indicating the number of days of jail credit thereby reducing the aggregate term. *See N.J.S.A.* 2C:43–10; 2C:44–5; *R.* 3:21–5. Our opinion therefore essentially impacts only cases involving defendants sentenced to custodial terms on multiple indictments.

[20] Under the State's interpretation of the rule, and one which flows from the principle that a defendant should receive credits only against a sentence for which the incarceration was "directly attributable," assume a defendant like Rose is "bailed out" or released on the first arrest after two days, and the second after 10 days, and then is arrested again and remains in custody for six months before disposition by plea. If he pleads to the first crime and the others are dismissed, he would be entitled to two days credit if bail is not revoked, notwithstanding negotiations to dispose of all charges.

either granting or denying credits. Both can promote sentence disparity based on the lack of uniformity in exercising discretion. Thus, such discretion avoids the very equal protection the *Rule* was designed to promote.[21]

## V.

Our dissenting colleagues make some statements that we feel compelled to address. In so doing, we agree that the *Rule* should be interpreted and applied in a consistent and uniform manner. However, many of the cases cited by our dissenting colleagues for support of a consistent application of the *Rule* present factual scenarios that are very different from those presented by Hernandez and Rose.[22]

While we acknowledge that *State v. Allen, supra,* 155 *N.J.Super.* at 584–85, 383 *A.*2d 138, appears to hold otherwise, a defendant in jail pending trial in one county subject to a detainer on charges in another county must receive jail credits under *Rule* 3:21–8 for that time on both charges if ultimately sentenced on both. We decline to rely on one Appellate Division case to hold otherwise. To the extent our opinion conflicts with *Allen,* we disapprove of that decision.

The dissent also states that we have "simply elected to transform time that should be counted as gap time under the statute

---

21 *N.J.S.A.* 2C:44–1(c)(2) expressly requires the sentencing judge to "consider the defendant's eligibility for release under the law governing parole, including time credits awarded pursuant to Title 30 ... in determining the appropriate term of imprisonment." *Ibid.* The judge must also consider "the jail credits or the amount of time the defendant has already served." *N.J.S.A.* 2C:43–2(f)(2).

22 *See, e.g., In re Hinsinger, supra,* 180 *N.J.Super.* at 499, 435 *A.*2d 850 (no jail credit for time held as material witness); *State v. Council, supra,* 137 *N.J.Super.* at 307–08, 349 *A.*2d 71 (no jail credit for time served attributable to federal sentence even where detainer filed by New Jersey authorities); *State v. Marnin, supra,* 108 *N.J.Super.* at 444–45, 261 *A.*2d 682 (time served for crime committed in 1953 not credited against unrelated conviction in 1968 where prior sentence found illegal).

... into jail credit to be awarded under the *Rule.*" However, we emphasize that once the first sentence is imposed, a defendant only accrues "gap-time" credits for time served thereafter when sentenced on the other charges. Thus, our holding does not convert gap-time credits into jail credits.

Finally, while we recognize that sentencing and appellate courts must "be mindful of the real-time consequences of NERA and the role that it customarily plays in the fashioning of an appropriate sentence," *State v. Marinez*, 370 *N.J.Super.* 49, 58, 850 *A.2d* 553 (App.Div.), *certif. denied*, 182 *N.J.* 142, 861 *A.2d* 846 (2004), that principle does not control our disposition. This appeal presents our first relevant inquiry into the meaning of *Rule* 3:21–8 in these circumstances—in one NERA and one non-NERA case. In deciding the case, we emphasize we are dealing with a court rule; there is no relevant legislative history for the dissent's proposition that the Legislature relied on prior interpretations of the *Rule* in adopting the gap-time statute. *See* II Commentary, Final Report of the New Jersey Criminal Law Revision Commission (1971) 2C:44–5; *see also* "A Review of the Legislative History of the New Jersey Code of Criminal Justice," including statements to 1978 enactment and 1979 revisions, 7 Crim. Just Quart 28–100 (1980). Moreover, the lack of legislative history has led us to recognize that "gap-time credits remain 'a riddle wrapped in a mystery inside an enigma.'" *Booker, supra*, 136 *N.J.* at 267, 642 *A.2d* 984 (quoting *State v. Edwards*, 263 *N.J.Super.* 256, 262, 622 *A.2d* 919 (App.Div.1993)). Legislative history concerning gap-time credits simply does not support the dissent's interpretation of the jail credit rule.

Today we simply clarify the manner in which jail credits, which are earned prior to the imposition of the first custodial sentence, are to be awarded with respect to multiple charges. Again, once the first sentence is imposed, a defendant awaiting imposition of another sentence accrues no more jail credit under *Rule* 3:21–8.

The matters are remanded for reconsideration of the award of jail credits consistent with this opinion. To the extent the opinion

may be deemed inconsistent with a prior interpretation of *Rule* 3:21–8, and because negotiated pleas and sentences in the "pipeline" were possibly based on a different understanding of the *Rule*, this opinion shall apply only prospectively to sentences imposed as of tomorrow, except for those matters still on direct appeal in which the amount of jail credits was actually questioned or challenged by defendant at sentencing. *See, e.g., Natale, supra*, 184 *N.J.* at 492–96, 878 *A*.2d 724; *Booker, supra*, 136 *N.J.* at 261, 642 *A*.2d 984.

Justice HOENS, dissenting.

Through the use of a single sentence embodied in *Rule* 3:21–8, this Court has defined a straightforward mechanism to award defendants credit for time spent in custody prior to imposition of sentence following a conviction. Its spare and simple language bears recitation: "The defendant shall receive credit on the term of a custodial sentence for any time served in custody in jail or in a state hospital between arrest and the imposition of sentence." *Ibid.*

Commonly called jail credit, the method set forth in our *Rule* has long served the overarching goals of our sentencing statutes, while protecting defendants' due process and equal protection rights. The *Rule* governing jail credit provides "day-for-day credits," *see Buncie v. Dep't of Corr.*, 382 *N.J.Super.* 214, 217, 888 *A*.2d 483 (App.Div.2005), *certif. denied*, 186 *N.J.* 606, 897 *A*.2d 1061 (2006), through which time spent in custody relating to a particular charged offense is counted toward the eventual sentence on that offense, including any period of parole ineligibility that has been imposed, thus reducing the time remaining to be served, *see Booker v. N.J. State Parole Bd.*, 136 *N.J.* 257, 263–65, 642 *A*.2d 984 (1994); *State v. Mastapeter*, 290 *N.J.Super.* 56, 64, 674 *A*.2d 1016 (App.Div.), *certif. denied*, 146 *N.J.* 569, 683 *A*.2d 1164 (1996). Its operation is different from, and it serves a different purpose than, gap time credit, *see N.J.S.A.* 2C:44–5(b), which is a statutory mechanism that provides credit toward a second-imposed sentence

for time spent serving an earlier one, *see Booker, supra,* 136 *N.J.* at 260, 642 *A.*2d 984, but which does not reduce a period of parole ineligibility, *see id.* at 261, 642 *A.*2d 984 (concluding that legislature intended parole disqualification period to be " 'an absolute term, against which there are to be no credits (other than jail credits)' ") (quoting *Booker v. N.J. State Parole Bd.,* 265 *N.J.Super.* 191, 207, 625 *A.*2d 1153 (App.Div.1993) (citing *N.J.S.A.* 30:4-123.51a)).

The wording of the jail credit *Rule,* which leaves no doubt about its meaning or about the manner in which it operates when multiple charges or offenses are addressed in separate sentencing proceedings, has been stated repeatedly and applied consistently. Twice in the past this Court has taken the opportunity to emphasize the meaning of *Rule* 3:21–8 through published opinions, each time making precise our intention about its operation. *See State v. Carreker,* 172 *N.J.* 100, 115, 796 *A.*2d 847 (2002); *State v. Black,* 153 *N.J.* 438, 456, 710 *A.*2d 428 (1998). Our holdings were explicit about the meaning of the *Rule* and we expressly limited its award of jail credit [1] by permitting it to apply "only for such confinement as is attributable to the arrest or other detention resulting from the particular offense." *Black, supra,* 153 *N.J.* at 456, 710 *A.*2d 428 (citations and internal quotations omitted).

Consistent with that understanding of the *Rule,* we refused to allow jail credit to a defendant who, while serving a sentence imposed in New York, was returned to this State pursuant to the Interstate Agreement on Detainers (IAD), *N.J.S.A.* 2A:159A–1 to –15. *See Carreker, supra,* 172 *N.J.* at 115, 796 *A.*2d 847. Even though defendant's presence here was for the purpose of awaiting trial on New Jersey charges, and even though defendant was eventually sentenced on those charges, she was not entitled to jail

---

[1] Although the majority dismisses the reference to *Carreker, supra,* as irrelevant, *see ante* at 44, 26 *A.*3d at 388 n. 16, it makes no effort to explain how its decision is in any way consistent with the interpretation of the *Rule* this Court utilized in both *Carreker, supra,* 172 *N.J.* at 115, 796 *A.*2d 847, and *Black, supra,* 153 *N.J.* at 456, 710 *A.*2d 428.

credit for that time. *Ibid.* Instead, we reasoned that because the IAD required that she continue to serve her New York sentence as a condition of her transfer, *see N.J.S.A.* 2A:159A–5(f), she was not held here because of the then-pending New Jersey charges, with the result that jail credit toward her eventual New Jersey sentence was not available under our *Rule, see Carreker, supra,* 172 *N.J.* at 115, 796 *A.*2d 847.

The decisions by this Court confirmed an understanding of the *Rule* that had been utilized by our trial and appellate courts in a long line of published opinions dating back decades. Those opinions were entirely uniform both in their reading and in their application of the *Rule,* regardless of the claims being raised by defendants seeking a new or different interpretation. One and all, they held, and we agreed, that the *Rule* is strictly limited in its application, explaining, for example, that "[w]hile *R.* 3:21–8 speaks in terms of credit for time spent in custody between arrest and sentencing, it is clear that the confinement must be 'directly attributable' to the particular offense for which the credits apply." *State v. Jones,* 184 *N.J.Super.* 626, 629, 446 *A.*2d 1263 (Law Div.1982).

From the very earliest analysis of *Rule* 3:21–8, our appellate courts have consistently interpreted it to limit the application of jail credits to the particular offense or offenses for which there was confinement or detention. *See, e.g., State v. Hemphill,* 391 *N.J.Super.* 67, 70, 917 *A.*2d 247 (App.Div.) (holding that defendant who was captured and held in custody in the United Kingdom based on New Jersey warrant was entitled to jail credit for that time in custody following conviction of charge that supported warrant), *certif. denied,* 192 *N.J.* 68, 926 *A.*2d 853 (2007); *State v. Dela Rosa,* 327 *N.J.Super.* 295, 298, 743 *A.*2d 336 (App.Div.) (holding that transfer from New York to appear on Bergen County indictments pursuant to IAD did not qualify for jail credit on sentence following New Jersey conviction), *certif. denied,* 164 *N.J.* 191, 752 *A.*2d 1293 (2000); *In re Hinsinger,* 180 *N.J.Super.* 491, 499–500, 435 *A.*2d 850 (App.Div.) (holding that defendant

arrested and held as material witness was not entitled to jail credit against sentence for contempt when he refused to testify), *certif. denied*, 88 *N.J.* 494, 443 *A.*2d 708 (1981). Simply put, *Rule* 3:21–8 only applies to confinement directly attributable to the particular offense giving rise to the initial incarceration.

Our courts have been uniform and consistent in the application of the *Rule* governing jail credits. For example, they have granted credit against a New Jersey sentence if defendant was held in another state's institution longer than he otherwise would have been because of a New Jersey detainer, *see State v. Beatty*, 128 *N.J.Super.* 488, 491, 320 *A.*2d 514 (App.Div.1974), but not if the detainer was unrelated to the reason that defendant remained incarcerated elsewhere, *see State v. Council*, 137 *N.J.Super.* 306, 308–09, 349 *A.*2d 71 (App.Div.1975), and not if defendant elected to be brought to New Jersey pursuant to the IAD and, while being held here, continued to be credited for time on a federal sentence, *see State v. Mercadante*, 299 *N.J.Super.* 522, 531, 691 *A.*2d 819 (App.Div.), *certif. denied*, 150 *N.J.* 26, 695 *A.*2d 668 (1997).

Similarly, the appellate courts have concluded that the *Rule* does not operate to treat jail time as if it were "money on deposit in the bank or a credit card, it may not be drawn on or credited for penalties imposed" for other unrelated crimes. *State v. Marnin*, 108 *N.J.Super.* 442, 445, 261 *A.*2d 682 (App.Div.1970) (refusing to grant credit for earlier-served time on unrelated illegal sentence), *certif. denied*, 59 *N.J.* 435, 283 *A.*2d 534 (1971), *cert. denied*, 400 *U.S.* 835, 91 *S.Ct.* 70, 27 *L.Ed.*2d 67 (1970); *see State v. Hill*, 208 *N.J.Super.* 492, 494–95, 506 *A.*2d 373 (App.Div.) (declining to read *Rule* to create credit for jail time spent awaiting trial on indictment that was eventually dismissed so that it could be used to reduce sentence imposed on charges in another county as to which detainer had been filed), *certif. denied*, 104 *N.J.* 412, 517 *A.*2d 411 (1986).

Not only is our existing jurisprudence consistent, but there is nothing unusual about the way in which the *Rule* should operate in the two unrelated appeals that the Court consolidated for consid-

eration in this appeal. Defendant Hernandez, facing sentences imposed for convictions in two different counties, and defendant Rose, charged with multiple crimes in more than one indictment in a single county, present familiar fact patterns in which the *Rule* has been interpreted previously. Until today, the *Rule* has been applied to such fact patterns to limit jail credit so that it only applies to the sentence for the particular offense to which incarceration was directly attributable.

The circumstances presented by defendant Hernandez were addressed, for example, in *State v. Allen*, 155 *N.J.Super.* 582, 383 *A*.2d 138 (App.Div.), *certif. denied*, 77 *N.J.* 472, 391 *A*.2d 487 (1978). There, the Appellate Division considered the *Rule's* operation as to a defendant held in Somerset County on charges brought there, who was then convicted in Middlesex County, following which he returned to Somerset County and entered a guilty plea to the original charges. *Id.* at 583, 383 *A*.2d 138. The court reasoned that defendant, who was granted jail credits against the Somerset sentence for the time spent in the Somerset County jail, was not also entitled to credit for the same time as against his Middlesex County sentence. The court explained its decision by noting that "[t]o give him credit for the 127 days in both counties would bestow upon him impermissible double credit. *R[ule]* 3:21–8 was never so intended." *Id.* at 585, 383 *A*.2d 138.

Likewise, the fact pattern posed by defendant Rose is not unlike the far more complicated scenario addressed in *State v. De Rosa*, 332 *N.J.Super.* 426, 753 *A*.2d 1164 (App.Div.2000). There, the appellate panel, faced with numerous charges that resulted in convictions arising from both guilty pleas and jury trials, carefully analyzed the basis on which defendant had been incarcerated during a lengthy period of time, in order to determine which periods were eligible for jail credit against which eventual sentences and which periods of incarceration should instead result in an award of gap time. *Id.* at 429–31, 753 *A*.2d 1164. As complicated as that analysis was, the court remained faithful to the essential purpose and operation of *Rule* 3:21–8.

To be sure, there has always been room in the analysis of the *Rule* for the possibility that unusual circumstances might provide a ground for the award of jail credits even though the strict operation of the *Rule* as traditionally understood would not support it. *See State v. Grate*, 311 *N.J.Super.* 456, 459, 710 *A.*2d 554 (App.Div.1998) (agreeing with Law Division's reasoning that "defendant's incarceration, even if not directly a consequence of the arrest in this case, was nevertheless fairly attributable to the indictment on which he was eventually sentenced"). Similarly, there has always been a recognition that unfair tactics by a prosecutor that were designed to maximize time to be served could support a different interpretation of the *Rule's* operation, *see Carreker, supra*, 172 *N.J.* at 105, 796 *A.*2d 847, although we have not had occasion to so apply it. Absent such unusual and compelling circumstances, however, neither we nor our appellate courts have varied from interpreting the *Rule* to limit the award of jail credits to time that can be directly attributed to a particular offense.

These numerous opinions, notably, post-dated the adoption of our *Code of Criminal Justice* and, therefore, proceeded in full awareness of the impact of our interpretation of the *Rule* on overall sentencing consequences. Even so, the majority's approach springs from a new-found belief that there is something unfair about the way the *Rule* and the gap time statute operate when an offender is subject to a sentence pursuant to the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2, and that it is of sufficient magnitude that it must now be addressed through a rather radical and unprecedented change in the way in which jail credits are awarded. Indeed, although "adher[ing] to *Richardson* [*v. Nickolopoulos*, 110 *N.J.* 241, 254–55, 540 *A.*2d 1246 (1988) ], and *Booker* and reject[ing] Hernandez's contention that her gap-time credit should reduce her parole bar," *ante* at 41, 26 *A.*3d at 386, the majority has simply elected to transform time that should be counted as gap time under the statute, *see N.J.S.A.* 2C:44–5(b)(2), into jail credit to be awarded under the *Rule*.

It is curious, to say the least, that in making that dramatic leap,[2] the majority has chosen as its vehicle one offender for whom its pious exhortation about the "real time consequence" of a NERA sentence has no relevance. Defendant Rose, who does not face a NERA sentence, thus becomes the beneficiary of a new interpretation of the *Rule* that rests on no particular rationale. In reality, the majority simply no longer cares for the manner in which the gap time credit statute and *Rule* operate and wishes to create something more advantageous to all defendants. That the Court supports that result by pointing to what it perceives to be unfairness to offenders facing NERA sentences translates into a disregard for the Legislature's contrary view about sentencing of those offenders. Instead of remaining faithful to the statutory framework applicable to those who have been convicted of multiple serious crimes, and who the Legislature has commanded are subject to substantial mandatory periods of parole ineligibility, the Court today confers upon them a lesser punishment.

That many offenders facing a NERA sentence will receive little reduction in the time they will actually serve through gap time is a fact. So, too, is the far more favorable treatment that they would obtain were we to apply instead the jail credit *Rule* to that time. But both of those realities, along with the manner in which our *Rule* has long calculated jail credits, are facts about which we must presume the Legislature is fully aware. *See State v. Fleischman*, 189 *N.J.* 539, 550, 917 *A.*2d 722 (2007) (relying upon "established principle of statutory interpretation that the Legislature is presumed to act with knowledge of the judicial construction given

---

[2] In responding, the majority states that "[t]here is nothing new or extraordinary in [its] holding." *Ante* at 47, 26 *A.*3d at 390. In its further, more direct response, however, the majority essentially concedes that its approach is an entirely new one. Both by "declin[ing] to rely" on *Allen, supra*, 155 *N.J.Super.* at 582, 383 *A.*2d 138, which the majority admits is directly on point, *see ante* at 49–50, 26 *A.*3d at 391–92, and by its remarkable observation that "[t]his appeal presents our first relevant inquiry into the meaning of *Rule* 3:21–8 in these circumstances," *see id.* at 50, 26 *A.*3d at 391–92, the majority makes plain that its approach is indeed a new and dramatic departure from precedent.

to predecessor or related enactments"); 2B Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 51:1 at 203 (7th ed.2008). Since NERA's adoption in 1997, the Legislature has not seen the need to address the operation of the two distinct kinds of credit nor has it elected to amend the gap time statute so that it operates to reduce the parole ineligibility period required under NERA. Surely, if the impact of the various kinds of credit in the context of a NERA sentence worked in a manner inconsistent with the Legislature's will, it would have acted to correct our long-standing application of the relevant statutes and our *Rule*.

The reason for the *Rule's* operation is simple and straightforward; any other interpretation leads directly to either double counting or to authorizing "free crimes" because time served at any time and for any offense becomes time served toward every offense, regardless of when it was committed. Nonetheless, against this clear and easily applied understanding of the *Rule*, and without even a hint of the kinds of foot-dragging or game-playing or overarching unfairness that might support a limited exception, the majority today embarks upon a new approach. For no apparent reason other than a change of mind, the majority now announces that time served on any offense will count as time served on all offenses. Although the majority implies that there is something in the operation of NERA that somehow makes our traditional reading of the *Rule* unfair or inconsistent with the statutes governing sentencing, the rationale behind this new reading of the *Rule* is nothing more than an effort to minimize the time that any offender will serve.

In the end, the majority has thwarted, and not enforced as it should, the expressed will of the Legislature; it has in fact concluded that the worst offenders in our criminal justice system, those facing multiple charges stemming from multiple arrests, regardless of the order in which those offenses were committed or the reason for the offender's continued presentence incarceration, will reap the benefit of having all of that time count against each

and every eventual sentence. Effectively, the majority has, at least for this category of offenders, created the circumstance in which, contrary to the clear meaning of the statute, time that the statute regards as gap time is transformed into jail credit, counting against the NERA parole ineligibility period.

There being no basis in the *Rule* or any of the sentencing statutes on which to make so radical a change in interpretation, and that change being contrary to the Legislature's clear intent as expressed both in NERA and in the gap time credit statute, I respectfully dissent.

*For remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, and STERN (temporarily assigned)—5.

*For affirmance*—Justices RIVERA–SOTO and HOENS—2.