**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1295-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DARIUS J. CARTER, a/k/a
BUDDAH BUDDAH, and
BUDDHA J. CARTER,

     Defendant-Appellant.

_____

Submitted May 14, 2019 – Decided June 24, 2019

Before Judges Gilson and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment Nos. 15-04-0319 & 15-03-0372.

Joseph E. Krakora, Public Defender, attorney for appellant (Amira Rahman Scurato, Designated Counsel, on the brief).

Scott A. Coffina, Burlington County Prosecutor, attorney for respondent (Nicole Handy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Darius Carter was charged, under two separate indictments, with eight crimes related to the possession and intent to distribute heroin and cocaine. Following the denial of his application to special probation drug court, and the denial of his motion to suppress the seizure of the physical evidence related to one of the indictments, defendant pled guilty to second-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(2), and third-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3). In accordance with his plea agreements, defendant was sentenced to an aggregate term of ten years in prison with five years of parole ineligibility. Thereafter, both of his judgments of conviction (JOCs) were amended to change thirty-four days of jail credit to gap-time credit.

Defendant now appeals from the denial of his application to drug court, the denial of his motion to suppress the physical evidence, and the change in his jail credits. Having reviewed these contentions in light of the record and law, we affirm the denial of defendant's application to drug court and the denial of his motion to suppress. Accordingly, we affirm his convictions and sentences. We remand for a hearing on what jail and gap-time credit should be accorded to defendant's sentences.

A-1295-17T4

## I.

We discern the facts and procedural history from the record developed through discovery, the hearing on the motion to suppress, and the plea hearing. Relevant to this appeal, a Burlington County grand jury charged defendant with crimes under two indictments: Indictment No. 15-03-0372 and Indictment No. 15-04-0319. The charges under Indictment No. 15-03-0372 arose out of an incident on January 9, 2015. The charges under Indictment No. 15-04-0319 arose out of an incident on September 24, 2014.

On January 9, 2015, defendant was in Pemberton Township and he was found to be in possession of heroin and cocaine. On March 24, 2015, a grand jury returned Indictment No. 15-03-0372, charging defendant with third-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3), and two counts of third-degree possession of heroin and cocaine, N.J.S.A. 2C:35-10(a)(1).

On September 28, 2014, defendant was driving a motor vehicle in Pemberton Township when the police stopped the vehicle because it had a partially covered license plate. After speaking with defendant and running a background check, the officers learned that he did not have a valid license and had two outstanding warrants. Defendant was arrested, and during his intake at the jail, an officer found 14.94 grams of heroin and a small quantity of cocaine

3

on defendant. On April 30, 2015, a grand jury returned a second indictment, Indictment No. 15-04-0319, charging defendant with fourth-degree tampering with evidence, N.J.S.A. 2C:28-6(1); second-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(2); two counts of third-degree possession of heroin and cocaine, N.J.S.A. 2C:35-10(a)(1); and third-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3).

In November 2015, defendant applied to special probation drug court pursuant to N.J.S.A. 2C:35-14(a). At that time, defendant had been charged with a number of crimes. In addition to the eight crimes under Indictments Nos. 15-03-0372 and 15-04-0319, defendant had three other pending indictments and several unindicted charges.

In connection with his drug court application, defendant underwent a Treatment Assessment Services for the Courts (TASC) evaluation to determine his level of drug or alcohol dependency. The TASC evaluator determined that defendant manifested symptoms of severe opioid use disorder, severe cannabis use disorder, moderate cocaine use disorder, and moderate alcohol use disorder. Based on his symptoms, the TASC evaluator recommended that defendant participate in a medically monitored intensive inpatient treatment program. The State, however, recommended defendant be denied drug court admission,

A-1295-17T4

contending he posed a significant threat to both the public and drug court community based on his status as a "for-profit drug dealer" with a prior weapons conviction.

On May 18, 2016, the court held a hearing on defendant's drug court application. At that hearing, both sides presented oral argument. Approximately one week later, on May 24, 2016, the court entered an order denying defendant's application. The court found that defendant was a danger to the community because he had been repeatedly arrested for numerous crimes and his criminal record included a conviction for unlawful possession of a weapon.

Defendant then filed a motion to suppress the physical evidence seized in connection with the motor vehicle stop on September 24, 2014, which resulted in the charges under Indictment No. 15-04-0319. At an evidentiary hearing on October 5, 2016, the parties stipulated that when the motor vehicle stop occurred, defendant had been driving a vehicle with a partially obstructed license plate. Specifically, the vehicle had a black frame on the rear license plate, which obstructed the words "Garden State." The parties further agreed that no part of the registration number was covered.

Defendant argued the motor vehicle stop was pretextual. In opposition, the State maintained the officers had a reasonable and articulable suspicion that

defendant was violating the law. After hearing oral argument, the court denied defendant's motion, finding the motor vehicle stop lawful.

Four months later, on February 15, 2017, defendant entered two guilty pleas. On Indictment No. 15-04-0319, defendant pled guilty to second-degree possession of heroin with intent to distribute. During his plea, defendant admitted that on September 24, 2014, he was arrested and during the intake procedure at the jail, an officer found 14.94 grams of heroin on his person, which he had intended to share with others. On Indictment No. 15-03-0372, defendant pled guilty to third-degree possession of heroin with intent to distribute. In entering that plea, defendant admitted that on January 9, 2015, he had possessed less than one-half ounce of heroin, which he intended to share with others.

In exchange for his guilty pleas, the State agreed to dismiss all remaining charges filed against defendant in Burlington County, which included six separate indictments and three sets of charges that had not yet been presented to a grand jury. The State also agreed to recommend a ten-year aggregate custodial sentence subject to a five-year period of parole ineligibility. Under the terms of the plea agreement, defendant reserved the right to appeal the denial of his drug court application in addition to his automatic right to appeal the denial of his motion to suppress. See State v. Mai, 202 N.J. 12, 19 n.2 (2010); Pressler & Verniero, Current N.J. Court Rules, cmt. 4 on R. 3:5-7 (2019) (stating a denial

of a motion to suppress based on an unlawful search and seizure will survive the entry of a guilty plea).

On April 20, 2017, the court sentenced defendant in accordance with the plea agreement to an aggregate term of ten years in prison, subject to a five-year period of parole ineligibility. Specifically, on Indictment No. 15-04-0319, for the second-degree conviction of possession of heroin with intent to distribute, defendant received a ten-year custodial sentence subject to a five-year period of parole ineligibility. On Indictment No. 15-03-0372, for the third-degree conviction of possession of heroin with intent to distribute, he received a five-year custodial sentence subject to a two-and-one-half-year period of parole ineligibility. Those sentences were run concurrently.

Four months after sentencing, the court entered amended JOCs for both convictions, changing thirty-four days of previously awarded jail credit to gap-time credit. The record does not indicate that there was a hearing concerning that change. Defendant now appeals.

II.

On appeal, defendant presents the following arguments:

> POINT I – THE TRIAL COURT ERRED IN DENYING DEFENDANT THE OPPORTUNITY TO PARTICPATE IN DRUG COURT.

A-1295-17T4

POINT II – DEFENDANT IS NOT A DANGER TO THE COMMUNITY.

POINT III – THE MOTOR VEHICLE STOP IN THIS CASE WAS NOT JUSTIFIED BY REASONABLE ARTICULABLE SUSPICION, THE OFFICER'S MISTAKE OF LAW DID NOT CURE THE INFIRMITY, AND THUS, ALL EVIDENCE SEIZED PURSUANT TO THE STOP MUST BE SUPPRESSED.

POINT IV – DEFENDANT'S JAIL CREDIT SHOULD BE REINSTATED.

Defendant's first two arguments relate to the denial of his drug court application. Thus, we will analyze defendant's arguments in three sections, addressing his contentions concerning the denial of his application to drug court, the denial of his motion to suppress, and the change in the jail credit.

A. The Drug Court Application

"Drug Courts are specialized courts within the Superior Court that target drug-involved 'offenders who are most likely to benefit from treatment and do not pose a risk to public safety.'" State v. Meyer, 192 N.J. 421, 428-29 (2007) (citing Administrative Office of the Courts, Manual for Operation of Adult Drug Courts in New Jersey (Drug Court Manual) at 3 (July 2002), https://www.njcourts.gov/courts/assets/criminal/dctman.pdf). There are two tracks for admission to drug court. State v. Clarke, 203 N.J. 166, 174-75 (citing Drug Court Manual at 10). Offenders must either satisfy the requirements for

"special probation" pursuant to N.J.S.A. 2C:35-14 (Track One), or "otherwise be eligible under other sections of the Code of Criminal Justice[,]" (Track Two). Drug Court Manual at 10; accord State v. Maurer, 438 N.J. Super. 402, 413 (App. Div. 2014) (quoting Clarke, 203 N.J. at 174-75).

Here, the motion court correctly considered defendant's drug court application under Track One because one of the pending charges against defendant was a second-degree offense. Therefore, he was subject to a presumption of incarceration. See State v. Hyland, ___ N.J. ___, ___ (2019) (slip op. at 10); N.J.S.A. 2C:35-14(a); N.J.S.A. 2C:44-1(d). To be eligible for "special probation" drug court, the motion court must find the nine factors set forth in N.J.S.A. 2C:35-14(a). Hyland, ___ N.J. at ___ (slip op. at 13). One of those factors is that placing a person into drug court will not pose a danger to the community. N.J.S.A. 2C:35-14(a)(9).

In evaluating defendant's application, the court reviewed and considered the TASC evaluation report, defendant's criminal history, and the positions of the prosecutor and defense counsel. Based on those materials, the court concluded defendant was "a danger to the community" as evidenced by his repeated arrests and convictions for indictable offenses, including a prior weapons conviction. Accordingly, the court found defendant ineligible for drug court because he could not satisfy N.J.S.A. 2C:35-14(a)(9).

The motion court's conclusion was consistent with the applicable law and supported by ample evidence in the record.  When defendant applied for drug court, he was facing over thirty pending criminal charges, including two second-degree drug-related charges.  Moreover, defendant had three prior indictable convictions, including a second-degree conviction for unlawful possession of a handgun, N.J.S.A. 2C:39-5(b).  Consequently, we discern no reversible error in the denial of defendant's drug court application.

B.  The Motion to Suppress

In reviewing a motion to suppress, we defer to the factual and credibility findings of the trial court, "so long as those findings are supported by sufficient credible evidence in the record."  State v. Coles, 218 N.J. 322, 342 (2014) (quoting State v. Hinton, 216 N.J. 211, 228 (2013)).  Deference is afforded "because the 'findings of the trial judge . . . are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'"  State v. Reece, 222 N.J. 154, 166 (2015) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).  "An appellate court should disregard those findings only when a trial court's findings of fact are clearly mistaken."  State v. Hubbard, 222 N.J. 249, 262 (2015) (citing State v.

A-1295-17T4

Johnson, 42 N.J. 146, 162 (1964)). The legal conclusions of the trial court "are reviewed de novo." Id. at 263 (citing State v. Gandhi, 201 N.J. 161, 176 (2010)).

"Motor vehicle stops are seizures for Fourth Amendment purposes." State v. Atwood, 232 N.J. 433, 444 (2018); accord State v. Dunbar, 229 N.J. 521, 532-33 (2017) (first citing Arizona v. Johnson, 555 U.S. 323, 333 (2009); then citing State v. Scriven, 226 N.J. 20, 33 (2016)). To lawfully stop a motor vehicle, an officer must have an "'articulable and reasonable suspicion' that a criminal or motor vehicle violation has occurred." Atwood, 232 N.J. at 444 (first quoting Delaware v. Prouse, 440 U.S. 648, 663 (1979); then citing Scriven, 226 N.J. at 33-34). The State bears the burden of demonstrating the reasonableness of an investigatory stop. See ibid. (citing State v. Maryland, 167 N.J. 471, 489 (2001)).

Here, the parties stipulated to the relevant facts at the suppression hearing. Namely, the parties agreed that when the motor vehicle stop occurred, defendant was driving a vehicle with a partially obstructed license plate. In that regard, the vehicle had a black license plate frame that obstructed the words "Garden State" on the rear license plate. The parties further agreed that the frame covered no part of the embossed registration number. After observing the obscured

11

license plate, the officers initiated the motor vehicle stop, believing defendant was violating N.J.S.A. 39:3-33.[1]

N.J.S.A. 39:3-33 provides in pertinent part that "[n]o person shall drive a motor vehicle which has a license plate frame . . . that conceals or otherwise obscures any part of any marking imprinted upon the vehicle's registration plate[.]"  Thus, the plain language of the statute prohibits a license plate from having a covering of "any marking imprinted" on the plate, including the words "Garden State."  N.J.S.A. 39:3-33; see also State v. Brown, 456 N.J. Super. 352, 359 (App. Div. 2018) (recognizing that courts "look first to the language of the statute" and if it "is clear and unambiguous on its face and admits of only one interpretation, [courts] need delve no deeper" (quoting State v. Butler, 89 N.J. 220, 226 (1982))).  Accordingly, in this case, the officers who conducted the motor vehicle stop had a reasonable and articulable suspicion that defendant was violating N.J.S.A. 39:3-33 when they observed that the license plate frame was partially obstructing the imprinted markings on the plate.

---

[1]  The parties never explicitly stipulated that the officers reported stopping defendant because they believed he was violating N.J.S.A. 39:3-33. Nonetheless, this stipulation is implicit as the parties repeatedly agreed they did not need any testimony from the officers, the court denied the State's request to admit the recording from the mobile video recorder into evidence, finding it was not necessary based on the stipulated facts, and defendant did not raise the argument on appeal.

Defendant contends a "common sense" reading of N.J.S.A. 39:3-33 requires that a violation can only occur when the letters and numbers composing the vehicle's registration are obstructed. We reject this argument. As previously discussed, only when the language of a statute is ambiguous will courts "look beyond the literal language and consider extrinsic factors, such as the statute's purpose, legislative history, and statutory context to determine the legislative intent." State v. Dougherty, 455 N.J. Super. 336, 341 (App. Div. 2018).

Here, the statute expressly prohibits even the partial concealment of any marking on the license plate, which includes the imprinted words "Garden State." See N.J.S.A. 39:3-33; N.J.S.A. 39:3-33.2 (stating the words "Garden State" are to be "imprinted" on vehicle registration license plates). Accordingly, defendant's "common sense" reading is not consistent with the statute's plain language.

C. The Jail and Gap-Time Credits

Criminal defendants are entitled to receive credit for time served while in custody awaiting sentencing or while serving a sentence on charges unrelated to those for which they are being sentenced. See R. 3:21-8; N.J.S.A. 2C:44-5(b)(2). Depending on their custodial status, defendants are entitled either to jail credits or gap-time credits. See State v. Hernandez, 208 N.J. 24, 36 (2011) (first citing R. 3:21-8; then citing N.J.S.A. 2C:44-5(b)(2)). The award of jail

and gap-time credit raises issues of law subject to de novo review. See State v. DiAngelo, 434 N.J. Super. 443, 451 (App. Div. 2014) (reviewing award of jail credits de novo); State v. L.H., 206 N.J. 528, 543 (2011) (reviewing award of gap-time credits de novo).

A defendant is awarded jail credits "for any time served in custody in jail . . . between arrest and the imposition of sentence." R. 3:21-8(a); see also DiAngelo, 434 N.J. Super. at 451. "Jail credits are 'day-for-day credits'" that accrue from the time a defendant is placed in custody for an offense until she or he is sentenced for that offense. State v. C.H., 228 N.J. 111, 117 (2017) (quoting Hernandez, 208 N.J. at 37); accord State v. McNeal, 237 N.J. 494, 499 (2019). Those credits apply to the "front-end" of a sentence. McNeal, 237 N.J. at 499 (citing C.H., 228 N.J. at 117, 121). As such, they reduce the minimum mandatory term a defendant must serve before becoming eligible for parole. Ibid. (citing C.H., 228 N.J. at 117, 121).

Conversely, a defendant may be entitled to gap-time credits if she or he is already serving a term of imprisonment for an unrelated offense. See Hernandez, 208 N.J. at 37-38; N.J.S.A. 2C:44-5(b)(2). Gap-time credits provide "a defendant who is given two separate sentences on two different dates credit toward the second sentence for the time spent in custody since he or she began serving the first sentence." Hernandez, 208 N.J. at 38. "Unlike jail credits, gap-

14

time credits . . . appl[y] to the 'back end' of a sentence" and, thus, do not reduce a period of parole ineligibility. Id. at 38, 41; accord State v. Rippy, 431 N.J. Super. 338, 348 (App. Div. 2013).

For a court to award gap-time credit, a defendant must prove three facts: "(1) the defendant has been sentenced previously to a term of imprisonment[;] (2) the defendant is sentenced subsequently to another term[;] and (3) both offenses occurred prior to the imposition of the first sentence." Hernandez, 208 N.J. at 38 (alterations in original) (quoting State v. Franklin, 175 N.J. 456, 462 (2003)). Where those three facts are established, "the sentencing court is obligated to award gap-time credits," rather than jail credits. Ibid. (citing Franklin, 175 N.J. at 462); accord Rippy, 431 N.J. Super. at 348 (citing Hernandez, 208 N.J. at 48-49).

"A challenge to an award or denial of jail credits, as inconsistent with Rule 3:21-8, constitutes an appeal of a sentence 'not imposed in accordance with law.'" DiAngelo, 434 N.J. Super. at 451 (quoting Rippy, 431 N.J. Super. at 347). If a defendant's sentence is "not in accordance with the law," it is an illegal sentence that "may be corrected at any time before it is completed." State v. Schubert, 212 N.J. 295, 308-09 (2012) (quoting State v. Murray, 162 N.J. 240, 246-47 (2000)). The procedures for correcting an illegal sentence are contained within Rule 3:21-10. See Schubert, 212 N.J. at 309.

A-1295-17T4

Relevant to this appeal, subsection (c) of <u>Rule</u> 3:21-10 provides:

> A hearing need not be conducted on a motion [to correct an illegal sentence] unless the court, after review of the material submitted with the motion papers, concludes that a hearing is required in the interest of justice. All changes of sentence shall be made in open court upon notice to the defendant and the prosecutor. An appropriate order setting forth the revised sentence and specifying the change made and the reasons therefor shall be entered on the record.

Thus, when a motion to correct an illegal sentence is made, the court should provide both the defendant and prosecutor notice before amending the sentence, and state on the record, in open court, the new, amended sentence. Moreover, the amended JOC needs to specify the change made and explain the reasons for that change. <u>Ibid.</u>

Here, the sentencing court initially awarded defendant a total of 209 days of jail credit on both sentences. That jail credit included thirty-four days when defendant was in custody from March 17, 2017 to April 19, 2017. Four months later, the court entered amended JOCs that changed the award of thirty-four days of jail credit to gap-time credit. Defendant maintains he was never provided notice that his jail credits were being amended or an explanation for the amendments. Without citing to any evidence in the record, the State contends that the change to defendant's jail and gap-time credits was proper because he was sentenced on a violation of probation in Camden County on March 17, 2017.

On the record before us, there is no proof that the court followed the procedures required by <u>Rule</u> 3:21-10(c) when it amended defendant's JOCs. Accordingly, we remand so that defendant can be provided with notice and an opportunity to address the awards of jail and gap-time credit. We express no view on the correct application. Instead, we remand so that if the sentencing court decides to change the original award of jail credit, the court can explain its reasons for that change.

Defendant's convictions are affirmed. We remand for a hearing on jail and gap-time credit. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1295-17T4