**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2505-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ALMARK L. ALSTON, a/k/a
ALMARRK L. ALSTON,
SHAFEI G. STARR, and
ALMARK G. ALSTON,

     Defendant-Appellant.

_____

Submitted November 5, 2020 – Decided December 10, 2020

Before Judges Whipple and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 17-08-2074 and 17-10-2872.

Joseph E. Krakora, Public Defender, attorney for appellant (Melanie K. Dellplain, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Amanda G. Schwartz, Deputy Attorney General, of counsel and on the brief)

PER CURIAM

Defendant Almark L. Alston appeals from his October 30, 2018 conviction for second-degree possession of a controlled dangerous substance (CDS) with the intent to distribute; two counts of third-degree possession of a CDS with the intent to distribute within 1000 feet of a school; and second-degree unlawful possession of a weapon, for which he was sentenced to five years in prison with a forty-two month parole disqualifier.

Prior to defendant's guilty plea, the trial court denied defendant's motion to suppress evidence found as a result of a vehicular stop based upon the driver not wearing a seatbelt. Defendant argues on appeal that the police lacked reasonable suspicion to stop the vehicle he was riding in as a passenger, and as a result, the evidence seized during the search must be suppressed. We disagree and affirm defendant's conviction, but reverse and remand to correct the parole disqualifiers on the drug charges and to recalculate defendant's jail credits.

I.

We derive the following facts from the record developed at the suppression hearing. In May 2017, Detective Mitchell Molina of the Irvington Township Police Department received a tip from a confidential informant regarding defendant, also known on the street as "Monster." By way of a

photograph, Detective Molina confirmed with the confidential informant that defendant was Monster. The informant advised Detective Molina that defendant was selling cocaine and heroin out of his apartment located in a senior citizen complex in Irvington as well as another nearby senior citizen complex. Customers would call defendant on his cellular phone and place orders for the amount and type of CDS they wanted to purchase. Defendant would then set up a meeting place. Detective Molina, who knew defendant from prior drug cases, set up surveillance at the two apartment complexes for a three-month period. During this time, Detective Molina observed defendant exit his apartment and meet with individuals at different locations. At the meeting location, defendant would produce items from the inner side of his pants in exchange for money, as noted by Detective Molina.

On June 27, 2017, Detective Molina emailed the assistant prosecutor an affidavit in support of an application for a search warrant for defendant's apartment. The assistant prosecutor reviewed the application and determined there was probable cause for a search warrant to issue. In her certification, the assistant prosecutor stated the search was for "heroin or other drugs" even though Detective Molina's affidavit stated the controlled buys were for "cocaine." Nevertheless, the search warrant issued.

A controlled buy was set up for the week of July 16, 2017, for two bags of "cook-up,"[1] and the informant paid defendant for the drugs. A second controlled buy was arranged for the week of July 23, 2017. The informant contacted defendant and ordered two bags of crack cocaine, and defendant advised as to the time and location to meet—Cumming Street and Clinton Avenue. Defendant met the informant at this location and sold the CDS to the informant, who in turn gave same to Detective Molina. The CDS was field-tested, and the result was positive for cocaine. Detective Molina maintained constant visual surveillance during these buys.

On August 14, 2017, the officers obtained a knock and announce warrant for defendant's apartment. Members of the Threat Assessment Criminal Intelligence Team (TACIT) went to defendant's apartment complex at approximately 4:15 p.m. The TACIT members included Detective Molina, Detective Janot, Detective Jenkins, Officer Mondeles, Officer Johnson, Officer Young, and Officer Jackson. A shooting at another location in Irvington occurred and all members of the TACIT team, except for Detective Molina, left defendant's apartment complex to respond to the shooting.

---

[1] "Cook-up" is the street name for crack cocaine.

Four hours later at about 8:51 p.m., Detective Molina observed defendant leave his apartment complex with his daughter and enter a green Jeep Cherokee that pulled up to the front of the building. With the aid of binoculars, Detective Molina saw defendant get into the Jeep and move something on the right side of his waistband from the front to the back, and based upon his training and experience, believed the item was a gun.

Detective Molina called Detectives Jenkins and Janot and reported his observations of defendant, the direction the Jeep was travelling, and that the driver, Akeem Addison, was not wearing a seatbelt. Detective Molina followed the Jeep, and Detectives Janot and Jenkins stopped the vehicle and called for backup because of defendant's suspected gun. After backup arrived, Detective Janot informed Addison and the occupants that he smelled marijuana. Addison admitted to having marijuana, consented to a search of the Jeep, and signed the requisite consent form. The search led to the discovery of a clear bag in the center console containing six grams of marijuana. Addison was placed under arrest. Two other passengers, Rasheed William and James Blocker, were dismissed.

During the traffic stop, defendant stated, "[m]y daughter's here, you got me." He admitted possessing a gun but asked to be removed from the Jeep to

A-2505-18T4

avoid his daughter seeing him with the gun. The officers obliged, removed defendant from the Jeep, and out of sight from defendant's daughter. A Silver Thomas PT 92 9mm handgun was removed from the right side of defendant's waistband, and he was placed under arrest. On his way to the patrol car, defendant walked in an awkward manner. He admitted to having a CDS in the front waistband of his pants. According to Detective Molina's testimony, fifteen baggies[2] of cocaine and ten glycine envelopes of heroin were uncovered. After the officers returned with defendant to his apartment and performed a search, eleven grams of cocaine and $8746 were found.

On August 1, 2017, an Essex County Grand Jury returned Indictment No. 17-08-2074, charging defendant with third-degree possession of cocaine, a CDS, N.J.S.A. 2C:35-10(a) (count thirteen);[3] and second-degree possession of cocaine with intent to distribute in a quantity of one-half ounce or more, N.J.S.A. 2C:35-5(b)(2) (count fourteen).

On October 13, 2017, an Essex County Grand Jury returned Indictment No. 17-10-2872, charging defendant with third-degree possession of cocaine,

---

[2] The investigative report indicated sixteen baggies of cocaine were removed. The discrepancy is not germane to our analysis.

[3] Counts one through twelve of the indictment do not pertain to defendant.

A-2505-18T4

N.J.S.A. 2C:35-10(a) (count one); third-degree possession of cocaine with the intent to distribute in a quantity of less than one-half ounce, N.J.S.A. 2C:35-5(a)(1); (b)(3) (count two); third-degree possession of cocaine with the intent to distribute while within 1000 feet of school property, N.J.S.A. 2C:35-7(a) (count three); third-degree possession of heroin, N.J.S.A. 2C:35-10(a) (count four); third-degree possession of heroin with the intent to distribute in a quantity of less than one-half ounce, N.J.S.A. 2C:35-5(a); (b)(3) (count five); third-degree possession of heroin while within 1000 feet of school property, N.J.S.A. 2C:35-7(a) (count six); second-degree possession of a 9mm handgun while in the course of committing an offense under N.J.S.A. 2C:35-5, N.J.S.A. 2C:39-4.1(a) (count seven); second-degree unlawful possession of a 9mm handgun, N.J.S.A. 2C:39-5(b) (count eight); and second-degree endangering welfare of children, N.J.S.A. 2C:24-4(a) (count nine).

Defendant and Detective Molina testified at the suppression hearing. Detective Molina stated that the discrepancy between use of the word "heroin" instead of "cocaine" in the application for the search warrant was the result of a typographical error. In her oral ruling in this matter, the motion judge found Detective Molina to be credible, the typographical error did not detract from the

validity of the search warrant, and determined that the "stop and search were reasonable and [did not] suppress any of the evidence[.]"

Pursuant to a negotiated plea agreement, defendant pled guilty to count fourteen on Indictment No. 17-08-2074 and counts three, six, and eight on Indictment No. 17-10-2872. Defendant's plea agreement included the prosecutor's recommendation of five years' imprisonment, with a forty-two-month period of parole ineligibility. The sentencing judge sentenced defendant in accordance with the plea agreement. This appeal ensued.

On appeal, defendant presents the following issues:

> POINT I
>
> THE RECORD DOES NOT SUPPORT THE MOTION COURT'S FINDING THAT LAW ENFORCEMENT OFFICERS HAD REASONABLE SUSPICION TO STOP THE CAR IN WHICH ALSTON WAS A PASSENGER, AND ALL EVIDENCE SEIZED AS A RESULT OF THIS UNLAWFUL STOP SHOULD HAVE BEEN SUPPRESSED.
>
> POINT II
>
> THE PAROLE DISQUALIFIERS FOR THE DRUG COUNTS ARE ILLEGALLY LONG. (Not Raised Below).

## II.

When considering a trial court's ruling on a motion to suppress evidence, "[w]e conduct [our] review with substantial deference to the trial court's factual findings, which we must uphold . . . so long as those findings are supported by sufficient credible evidence in the record." State v. Hinton, 216 N.J. 211, 228 (2013) (citation and internal quotation marks omitted). "Those findings warrant particular deference when they are substantially influenced by the trial judge's opportunity to hear and see the witnesses and to have the feel of the case, which a reviewing court cannot enjoy." State v. Rockford, 213 N.J. 424, 440 (2013) (citation and internal quotation marks omitted).

"We review the record on a motion to suppress to determine whether the findings are supported by credible evidence and the legal conclusions are valid." State v. Smith, 374 N.J. Super. 425, 430 (App. Div. 2005) (citing State v. Alvarez, 238 N.J. Super. 560, 564 (App. Div. 1990)). The United States and New Jersey Constitutions guarantee an individual's right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV; N.J. Const. art. 1, ¶ 7. A warrantless search is "'presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement.'" State v. Wilson, 178 N.J. 7, 12 (2003) (quoting State v. Cooke, 163 N.J. 657, 664 (2000)).

"A lawful stop of an automobile must be based on reasonable and articulable suspicion that an offense . . . has been or is being committed." State v. Carty, 170 N.J. 632, 639-40 (citing Delaware v. Prouse, 440 U.S. 648, 663 (1979)), modified by 174 N.J. 351 (2002). In this case, Detective Molina personally observed that Addison, the driver of the Jeep, was not wearing a seatbelt. See N.J.S.A. 39:3-76.2. It was, therefore, proper to stop the vehicle for this traffic offense.

In considering these principles, we agree with the State and the motion judge that Detective Molina had a lawful basis to stop the Jeep based upon his observation that the driver was not using a seatbelt. Since the Legislature amended the traffic laws in 2000, the failure of a driver or a front-seat passenger to use a seatbelt is no longer a secondary offense, so that police officers may stop and ticket a motorist for such an observed violation without observing him or her commit any other offenses. See N.J.S.A. 39:3-76.2; L.1999, c. 422 (eff. May 1, 2000).

Whether the officer was justified in asking defendant to step out of the vehicle and thereafter conduct a pat-down search is addressed in State v. Smith, 134 N.J. 599 (1994). "'[A]n officer must be able to point to specific and articulable facts that would warrant heightened caution to justify ordering the

occupants to step out of a vehicle detained for a traffic violation.'" State v. Bacome, 440 N.J. Super. 228, 237 (App. Div. 2015), rev'd on other grounds, 228 N.J. 94 (2017) (quoting Smith, 134 N.J. at 618). The Smith court stated:

> To support an order to a passenger to alight from a vehicle stopped for a traffic violation, . . . the officer need not point to specific facts that the occupants are "armed and dangerous." Rather, the officer need point only to some fact or facts in the totality of the circumstances that would create in a police officer a heightened awareness of danger that would warrant an objectively reasonable officer in securing the scene in a more effective manner by ordering the passenger to alight from the car.
>
> [Smith, 134 N.J. at 618.]

Defendant argues that Detectives Jenkins and Janot did not testify at the suppression hearing, and therefore, Detective Molina, who did not stop the Jeep, could not explain why the vehicle was stopped. Further, defendant asserts that the State initially contended the Jeep was stopped to execute the search warrant, and not because of Addison's seatbelt violation. We reject defendant's arguments.

The record shows that once Detective Molina observed defendant enter the Jeep and watched it drive away, he informed Detectives Janot and Jenkins about what was transpiring "throughout the whole process." Importantly, this included the fact that Addison was driving without a seatbelt on. Moreover,

11

Detective Molina directed Detectives Janot and Jenkins to monitor defendant "based on the actions that [he] saw." The motion judge found Detective Molina to be credible and did not find defendant credible.

Here, the information known to Detective Molina coupled with his observation of the driver not wearing his seatbelt, objectively considered, supports a reasonable suspicion here to stop and ticket the driver for not wearing a seatbelt. The motion judge correctly found that the investigating stop here was lawful. See Carty, 170 N.J. at 639-40, modified by, 174 N.J. 351 (2002). Detective Molina observed defendant move an item, which turned out to be a gun, on the right side of his waistband from the front to the back upon entering the Jeep. In the present matter, we are satisfied that the motion judge's findings of fact are supported by sufficient credible evidence in the record, and the matter was correctly decided. We therefore affirm the order denying defendant's suppression motion.

### III.

In Point II, defendant challenges the forty-two month period of parole ineligibility on his drug charges as excessive and seeks recalculation of jail credits. Defendant does not dispute the mandatory-minimum term imposed on the weapon offense. He argues his sentence is illegal and the matter should be

remanded for sentencing. The State concedes a remand is required to correct the parole ineligibility term for the drug charges and to recalculate jail credits.

With respect to parole ineligibility, the Graves Act, applicable to any person convicted of the unlawful possession of a firearm, N.J.S.A. 2C:39-5(b), provides, in relevant part, that a person found guilty of violating the statute "shall be sentenced to a term of imprisonment," which "shall include the imposition of a minimum term[,] . . . fixed at one-half of the sentence imposed by the court or 42 months, whichever is greater[.]" N.J.S.A. 2C:43-6(c).

The mandatory-minimum term was properly imposed on defendant's gun offense by the sentencing court. However, with respect to counts three and six under Indictment No. 17-10-2872, defendant was convicted of third-degree possession of a CDS with the intent to distribute while within 1000 feet of school property in violation of N.J.S.A. 2C:35-7(a).

As it pertains to parole ineligibility, N.J.S.A. 2C:35-7(a) provides

> that a person found guilty of violating the statute shall be sentenced to a term of imprisonment that "shall include the imposition of a minimum term which shall be fixed at, or between, one-third and one-half of the sentence imposed, or three years, whichever is greater, during which the defendant shall be ineligible for parole." However, the statute was amended in 2010 to grant the court discretion to waive or reduce the parole ineligibility period. N.J.S.A. 2C:35-7(b).

Accordingly, we deem it necessary to remand the matter for resentencing so that the sentencing judge can consider the parole ineligibility provision under N.J.S.A. 2C:35-7(b) and whether defendant should be allowed to avail himself of the 2010 amendment that would permit a waiver or reduction of the parole ineligibility period. If so, the judge must then go on to consider the factors enumerated in N.J.S.A. 2C:35-7(b) to determine whether to waive or reduce the period of parole ineligibility.

Lastly, defendant argues the sentencing judge erred in awarding him 456 days of jail credit on Indictment No. 17-08-2074[4] but failed to award any jail credit on Indictment No. 17-10-2872, in contravention of our Supreme Court's holding in State v. Hernandez, 208 N.J. 24, 28 (2011). In Hernandez, our Court adopted a new standard for awarding jail credits to defendants subject to sentencing on multiple indictments. Hernandez requires the award of credits against all sentences for the time the defendant spent in custody between arrest and imposition of the first sentence, irrespective of the offense to which that custody was directly attributable. Id. at 28, 47.

---

[4] The judgment of conviction (JOC) states jail credits were awarded from February 3, 2017, to February 7, 2017, and from August 4, 2017, to October 28, 2018.

Moreover, our court rules provide that a "defendant shall receive credit on the term of a custodial sentence for any time served in custody in jail or in a State hospital between arrest and the imposition of sentence." R. 3:21-8(a). When the rule applies, the award of credits is mandatory and results in a day-for-day reduction applied to the front end of a defendant's custodial sentence. Hernandez, 208 N.J. at 37. The credits serve the important policy goals of equal protection and fundamental fairness by "preventing the 'double punishment' of indigent defendants who cannot afford bail." State v. Joe, 228 N.J. 125, 131 (2017) (quoting State v. Rawls, 219 N.J. 185, 193 (2014)).

Based on the rationale espoused in Hernandez, we conclude the JOC for the second offense under Indictment No. 17-10-2872 needs to be amended to reflect jail credits from August 4, 2017, to October 28, 2018, which is 451 days. Defendant's conviction is otherwise affirmed. The matter is remanded for correction of defendant's parole disqualifiers on the drug charges and jail credits and entry of an amended JOC. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2505-18T4